[Cite as *State v. Hughes*, 2009-Ohio-4115.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

   PLAINTIFF-APPELLEE,                  CASE NO. 17-09-02

   v.

MARK HUGHES,                           **O P I N I O N**

   DEFENDANT-APPELLANT.

---

**Appeal from Sidney Municipal Court**
**Trial Court No. 08CRB01238**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  August 17, 2009**

---

APPEARANCES:

   *William R. Zimmerman, Jr.* for Appellant

   *David M. Treadway* for Appellant

   *Tonya Thieman* for Appellee

**ROGERS, J.**

{¶1} Defendant-appellant, Mark A. Hughes, appeals the judgment of the Sidney Municipal Court convicting him of child endangering. On appeal, Hughes argues the trial court erred in convicting him because there was insufficient evidence presented to sustain a conviction, and because his conduct was not reckless and did not create a substantial risk to his daughter's health or safety, as is required under R.C. 2919.22(A). Furthermore, Hughes argues that the trial court erred in convicting him because the complaint failed to set forth the proper mental state for the offense; because he was not advised of the correct mental state for the offense; and, because any amendment to the complaint would change the identity of the offense. Based on the following, we reverse the judgment of the trial court.

{¶2} In August 2008, Hughes was charged by complaint with one count of endangering children in violation of R.C. 2919.22, a misdemeanor of the first degree. The complaint arose from an incident whereby Hughes left his five-year-old daughter in his vehicle alone, with the air conditioning running, while he was in Wal-Mart for approximately twenty-seven minutes.

{¶3} In November 2008, the matter proceeded to a bench trial, at which the following testimony was heard. Officer Andrew Shappie of the Sidney Police Department testified that he responded to the Wal-Mart in Sidney, Ohio, around 4:22 p.m. on August 22, 2008, following a report that a white male had left a small

child inside a blue Chevrolet truck for a period of time; that he located a four to six-year-old girl seated in a child seat on the passenger side of the vehicle; that he was not sure whether the doors to the truck were locked, but that the child opened the door when he approached the vehicle; that "most of the rows in the Wal-Mart parking lot was [sic] filled with unoccupied cars," (trial tr., p. 8) estimated to be between twenty to fifty cars; that he radioed dispatch and requested that dispatch contact Wal-Mart in order to page the person owning the vehicle over the store intercom; that he remained with the child for approximately twenty-seven minutes until Hughes emerged from Wal-Mart and returned to his vehicle; and, that Hughes told him that he had only left his daughter for a few minutes while he went inside the store.

{¶4} Officer Shappie also testified that the child had been left in the vehicle while it was still running; that the child was able to open the doors; and, that the potential dangers to the child caused by leaving her in the vehicle alone were "[t]he multiple cars in the parking lot, the vehicle running, keys in the ignition, the period of time that she was left alone, her age, and she was able to open the car door herself." (Id. at 11-12).

{¶5} On cross-examination, Officer Shappie admitted that he could not recall whether the truck had a bench seat or bucket seats; that the incident occurred in August, but that the air conditioning was left running in the truck; that the girl was left with a DVD player; and, that at no time did the child exit the vehicle.

{¶6} Thereafter, the State rested, and Hughes made a Crim.R. 29 motion. During the arguments on the motion, there was a discussion as to whether the culpable mental state for child endangering was knowingly, and whether the State set forth enough evidence to prove Hughes possessed that mental state in committing the offense. Furthermore, the State moved to delete the word "knowingly" from the complaint. The trial court decided to reserve a ruling on the culpable mental state for child endangering until it could conduct further research, but denied the motion, concluding that, even if the culpable mental state was knowingly, sufficient evidence was presented to sustain a conviction.

{¶7} Subsequently, Hughes testified in his defense that he and his daughter drove to Wal-Mart on the date at issue, but that his daughter was watching a cartoon on a DVD player and did not want to go inside the store; that it was very hot that day, and that he would normally take his daughter with him into the store; that he "locked the doors, and gave her the cell phone, which [she was] capable of using, and told her if she had any problem, to give [him] a call. Told her what number to call, and [he] left that [sic] and went into Wal-Mart to * * * hand [his] friend some money" (Id. at 22); that his daughter was a "very bright" five-year-old, who would be six in January; that he went into the Wal-Mart and could not locate his friend, so he walked around the store trying to find her; that he was in the store approximately fifteen to twenty minutes; and, that, after about fifteen minutes in Wal-Mart, he heard his name being paged.

{¶8} Hughes continued that it was a very hot day, so he left the vehicle running only so that the air conditioning continued to operate; that his S-10 Chevrolet pick-up truck had bucket seats, not a bench seat, and that his daughter was secured in a child booster seat; that his daughter had never inappropriately operated the vehicle before, and he instructed her not to do so; and, that he "wouldn't have left [his daughter] in [the vehicle] if [he] thought she was in any danger." (Id. at 25-26).

{¶9} On cross-examination, Hughes explained that he gave his daughter his cell phone and instructed her to call Annette, his friend shopping inside Wal-Mart, if she had any problems; that this was the first number on his cell phone, and that his daughter had called Annette before; that he was uncertain whether his daughter attempted to call Annette that day; and, that he never left his daughter in the vehicle alone before that day.

{¶10} Thereafter, the trial court asked Hughes if his daughter could get out of the child seat, to which Hughes stated as follows:

> **Absolutely. She knows how to unlock the car doors also, but I've also instructed her – actually, I was, I told her never to, to unlock the door and let anybody else in, because I was a little bit upset when I got there and the door was wide open and the police officer was standing there, so –**

(Id. at 28).

{¶11} Subsequently, the trial court found Hughes guilty of child endangering, stating the following from the bench:

> **And the Court finds that the actions, sir, of yours was [sic] reckless, even more so, I suppose, that given the fact that the child could get out of the child seat and not only walk out the car door and go wherever, but, * * * to go over to the driver's seat with the car, with the keys in the ignition of the car and put the car in gear and cause danger to herself or to others; but, you know, Lord help us, if it wasn't the officer, it may have been somebody else that, that presented himself or herself as an officer to this five-year old child and the five-year old child opens up the door and maybe the child disappears. So the Court is going to find you guilty as charged in the case and continue this matter for a pre-sentence investigation.**

(Id. at 29-30).

{¶12} Additionally, the trial court found that the culpable mental state for child endangering was reckless, and that, even though the complaint used the term "knowingly", any error was harmless, as proving the mental state of knowing placed a greater burden on the State than proving the mental state of reckless.

{¶13} In December 2008, the matter proceeded to sentencing, where the trial court imposed a $150 fine and a forty-five-day jail term, with the jail term to be reconsidered if Hughes paid his fine and costs within ninety days, completed parenting classes, and violated no other laws.

{¶14} It is from this judgment that Hughes appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT JUDGMENT IS CONTRARY TO LAW IN THAT THE CONDUCT WAS NOT RECKLESS AND DID NOT CREATE A SUBSTANTIAL RISK TO THE CHILD'S HEALTH OR SAFETY.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN CONVICTING APPELLANT BECAUSE THE JUDGMENT WAS BASED ON INSUFFICIENT EVIDENCE.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY BECAUSE THE COMPLAINT WAS FLAWED, THE MENTAL STATE WAS NEVER MADE KNOWN TO APPELLANT, AND ANY AMENDMENT TO THE MENTAL STATE WOULD CHANGE THE IDENTITY OF THE CRIME.**

{¶15} Due to the nature of his arguments, we elect to address Hughes' first two assignments of error together.

*Assignments of Error Nos. I and II*

{¶16} In his first assignment of error, Hughes argues that his conviction was contrary to law, as his conduct was not reckless and did not rise to the level of creating a substantial risk to his daughter's health or safety. In his second assignment of error, Hughes argues that his conviction was based upon insufficient evidence, specifically that the evidence failed to show he recklessly created a substantial risk to his daughter's health or safety.

{¶17} As a preliminary matter, we note that the State has misconstrued Hughes' assignments of error to raise a manifest weight argument. In fact, the State only lists two assignments of error in its brief even though Hughes raised three in his brief. Presumably, the State has combined Hughes' first two

assignments of error into a manifest weight argument. We, however, interpret Hughes' first two assignments of error to argue that his conviction was based upon insufficient evidence as to two elements of the offense: the mental culpability element of "reckless," and the substantial risk to the child's health or safety element.

{¶18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. Sufficiency is a test of adequacy, *State v. Henry*, 3d Dist No. 13-08-10, 2009-Ohio-3535, ¶20, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in *Smith*, supra.

{¶19} The criminal offense of endangering children is codified in R.C. 2919.22(A),[1] which provides, in pertinent part:

> **No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.**

{¶20} "'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Ohio Jury Instructions suggests emphasizing the distinction between a significant possibility and a strong possibility by adding the phrase "even a" before the term "significant possibility."

> **"Substantial risk" means a strong possibility as contrasted with a remote or (even a) significant possibility, that a certain result may occur or that certain circumstances may exist.**

Ohio Jury Instructions (2008), Section CR 509.03(3).

{¶21} In determining whether a substantial risk to the health or safety of the child exists, the trial court is not permitted to "make an inference upon an inference in order to transform a speculative risk into a substantial risk. To prove the requisite 'substantial risk' element, * * * there must be some evidence beyond mere speculation as to the risk of harm that could potentially occur due to a single

---

[1] R.C. 2919.22 was recently amended on January 6, 2009; however, the amendments did not affect section (A), at issue here. (Am.H.B. No. 280, 2008 Ohio Laws File 155, eff. 4-7-09).

imprudent act." *Middletown v. McWhorter*, 12th Dist. No. CA2006-03-068, 2006-Ohio-7030, ¶11, citing *State v. Caton* (2000), 137 Ohio App.3d 742, 751.

**{¶22}** Additionally, to obtain a conviction under R.C. 2919.22(A), the State must prove beyond a reasonable doubt that the accused acted recklessly. *State v. McGee*, 79 Ohio St.3d 193, 1997-Ohio-156, syllabus. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶23}** In the case at bar, Officer Shappie testified to the risks present to the child as:

> **The multiple cars in the parking lot, the vehicle running, keys in the ignition, the period of time that she was left alone, her age, and she was able to open the car door by herself.**

(Trial tr., pp. 11-12). Although the officer's testimony, in and of itself, was not a statement of risks, but was only a statement of facts that could lead to a conclusion that risks were present, from this testimony, the trial court found three substantial risks to the child's safety: (1) the child could have exited the vehicle and been injured in the busy parking lot; (2) the child could have been kidnapped if she would have exited the vehicle or opened the doors for a stranger; and, (3) the child could have placed the vehicle in drive and struck another vehicle or object. The problem with all three of these scenarios is that none is fully supported by the facts

presented, and each requires multiple contingencies to occur and several inferences to be made before the actual harm is brought to fruition.

**{¶24}** First, before any risk to the child's safety could have actually materialized, the child would have had to stop watching her DVD and then remove herself from the child seat. Although Hughes testified that his daughter was able to get out of the child seat, the inference must still be drawn that she would have actually gotten out of the seat, and would have taken some further unknown action, before a conclusion can be reached that her safety was placed at substantial risk. Not only was there no testimony presented that this child would be prone to act in a careless or reckless manner, but there was testimony presented that she was an extremely bright child, suggesting that she would be more careful than others her age.

**{¶25}** Second, in order for the child to be harmed by placing the vehicle into gear and striking other vehicles or objects, she would have had to be able to reach the brake and gearshift at the same time, as almost all vehicles cannot be placed into gear unless the brake is first depressed. If the vehicle had a manual transmission, the child would also have had to depress the clutch and shift the vehicle into gear. Completing any of these tasks would have posed substantial difficulty to a five-year-old child, as she does not possess the stature and strength that make these tasks so simple for the average adult. Moreover, if the emergency brake on the vehicle was activated, the likelihood of the child being able to move

the vehicle would have been much more remote. Although we do not have any evidence on the workings of the vehicle in question, neither did the trial court, and it certainly strains logic to say that, based upon all the contingencies, there was a strong possibility that the child could have placed the car into gear and caused the vehicle to move and cause some kind of collision. Finally, an additional leap of logic would be required to assume that the child would be injured in an imagined collision.

{¶26} Third, in order for the child to be injured in the parking lot, she would have had to unlock the door, exit the vehicle, and then take some additional action which would place her at risk of being hit by a vehicle, such as recklessly running around the parking lot. Simply stepping outside and standing next to the vehicle would not have placed her safety at a substantial risk. While Hughes testified that his daughter was capable of unlocking the door, no testimony was presented that the "extremely bright" child would not have exercised caution if she had exited the vehicle, and, in the absence of such evidence, any conclusion that her safety was placed at substantial risk would be based on mere speculation and multiple inferences.

{¶27} Finally, in order for the child to be abducted, she would have had to directly disobey her father's instruction that she not unlock the door, someone would have had to break into the vehicle, or she would have had to exit the vehicle. Although the child did open the door for the police officer, that alone

does not mean she would have opened the door for a stranger, as most children are able to recognize police officers and understand that they are trustworthy. Additionally, an abduction was contingent upon there being someone present with a motive to abduct her in the thirty minutes that she was left unattended. While child abduction is always a remote possibility in today's society, it is difficult to conclude that leaving a child in a locked vehicle for around thirty minutes presents a strong possibility that an abduction will occur.

{¶28} Furthermore, we find there to be an absence of criminal recklessness presented by the facts. R.C. 2901.22(C) defines reckless as follows:

> **A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.**

{¶29} Here, Hughes testified that he left the air conditioner on because of the weather, and that he gave the child a cell phone so she could call if she had a problem. These facts demonstrate sufficient concern to negate the possibility of a finding that Hughes exercised "heedless indifference" and "perversely disregard[ed] a known risk," such that recklessness could be found.

{¶30} Other courts have found a substantial risk to a child's safety under the statute to be lacking based upon facts similar to these and with even more evidence of a risk of harm. In *State v. Martin* (1999), 134 Ohio App.3d 41, the

First Appellate District found that a mother who left her almost nine-year-old child sleeping in the back of a car as she went into a department store for twenty to thirty minutes, where the child accidently knocked the car into gear, causing it to roll into another vehicle, did not create a substantial risk to the child's safety. In reaching its conclusion, the court stated:

> **While appellant may have created some speculative risk to her child, we cannot hold that she created a strong possibility that the child would be injured. * * * To conclude otherwise would require an inference upon an inference - that the car would strike another vehicle and that the child would also be injured - which is legally impermissible.**

(Citations omitted). Id. at 44.

{¶31} Additionally, in *State v. Boone*, 1st Dist. No. C-950427, 1996 WL 454813, the court found that a mother who intentionally drove away and left her seven-year-old child in the parking lot of K-Mart did not create a substantial risk to the child's health or safety. Even though there was some dispute about whether the mother was gone for five or fifteen minutes, the Court noted that the mother's behavior only created a speculative risk to the child, not a substantial risk.

{¶32} Here, just as in *Martin* and *Boone*, any substantial risk to the child's safety was merely speculative. The officer's testimony did not establish the existence of a substantial risk to the health or safety of the child, but only presented potentially hazardous scenarios that, although might have been remotely or even significantly possible, did not have a strong possibility of occurring. The

-14-

trial court's conclusion that a substantial risk to the child's health or safety existed was based purely on multiple inferences and contingencies. To conclude that these risks were something other than speculative "would require an inference upon an inference * * * that the child would * * * be injured - which is legally impermissible." *Martin*, 134 Ohio App.3d at 44.

{¶33} Because of the lack of evidence demonstrating that Hughes' actions recklessly created a substantial risk to the health or safety of his daughter, and because of the multiple inferences and contingencies drawn by the trial court to conclude that a substantial risk to the child's health or safety was present, we find that insufficient evidence exists to support the trial court's verdict pronouncing Hughes guilty of child endangering.

{¶34} Although we find that a substantial risk to the child's health or safety was not presented by the evidence, we note that the outcome of this case is intensely fact-specific, meaning that the limited facts presented here failed to demonstrate the high degree of risk required by the statute: to wit, substantial risk. Not all instances of a parent leaving a child in a vehicle for almost thirty minutes will necessarily entail a conclusion that a substantial risk to the child's health or safety was not present. Nevertheless, more than speculative evidence must be presented to sustain a conviction for child endangering.

{¶35} Finally, we do not, in any way, condone Hughes' imprudent and irresponsible parenting decision to leave his daughter unattended in his vehicle for

around thirty minutes. However, simply because Hughes made an irresponsible parenting decision does not mean that his conduct rises to the level of a criminal offense, deserving of fines and possible imprisonment. It is not the function of the criminal justice system to invade the sacred right of parents to raise their children as they deem suitable and proper, and police officers and prosecutors should exercise the appropriate discretion in deciding whether a parent's conduct crosses that thin line between bad parenting and criminal culpability. "We, as a society, cannot [criminally] punish parents for every error in judgment, even if a child is injured, under a theory of strict liability." *Martin*, 134 Ohio App.3d at 43.

{¶36} Accordingly, we sustain Hughes' first two assignments of error.

*Assignment of Error No. III*

{¶37} In his third assignment of error, Hughes argues that the trial court erred in convicting him of child endangering because the complaint failed to set forth the proper mental state for the offense; because he was not advised of the correct mental state for the offense; and, because any amendment to the complaint would change the identity of the offense.

{¶38} Our disposition of Hughes' first and second assignments of error renders his third assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).

{¶39} Having found error prejudicial to the appellant herein, in the particulars assigned and argued in his first and second assignments of error, we

reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

***Judgment Reversed and Cause Remanded***

**SHAW, J., concurs in Judgment Only.**

**PRESTON, P.J., dissents.**

**{¶40}** I respectfully dissent from the majority's conclusion that the trial court had insufficient evidence to find that Hughes created a substantial risk to the health or safety of his 5-year-old daughter. Since I would overrule Hughes' first and second assignments of error, I would also analyze Hughes' third assignment of error, though I would find it meritless. I would, therefore, affirm Hughes' conviction.

**{¶41}** When reviewing a conviction for sufficiency of the evidence "[t]he relevant inquiry is whether, after viewing the evidence *in a light most favorable to the prosecution*, *any rational trier of fact* could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (emphasis added). In light of *this* applicable standard—not the quasi de novo review employed by the majority—and the particular facts and circumstances of *this case*, the State presented sufficient evidence to show that Hughes created a substantial risk to his daughter's health or safety.

**{¶42}** The testimony at trial demonstrated that, on a "very hot" day in August 2008, Hughes parked his Chevy S-10 pick-up truck in a Wal-Mart parking lot located a few miles off Interstate 75, leaving his 5-year-old daughter locked inside unsupervised with the truck's engine running and the keys in the ignition, for *over* 27 minutes. (Mar. 16, 2009 Tr. at 4-5, 8-10, 22). When asked about the potential dangers to the child caused by leaving her in the vehicle alone, Officer Shappie testified: "[t]he multiple cars in the parking lot, the vehicle running, keys in the ignition, the period of time that she was left alone, her age, and she was able to open the car door herself." (Id. at 12). I would conclude, as the officer and the trial court did, that leaving a 5-year-old child in a vehicle that is running with the keys in the ignition for *over 27 minutes* creates a substantial risk to the child's health or safety. For example, Hughes' 5-year-old daughter could have placed the vehicle in motion, hit someone or something, and been injured. See *State v. Voland* (1999), 99 Ohio Misc.2d 61, 72, 716 N.E.2d 299 (giving an unsupervised 12-year old girl keys to a car recklessly created a substantial risk to child's safety).

**{¶43}** The majority, on the other hand, argues that the risks to the child's health or safety were speculative. A "substantial risk," however, requires only a "strong *possibility* * * * that a certain result *may* occur * * *," not that a certain result(s) *actually* occurred or *definitely* would occur. R.C. 2901.01(A)(8). Furthermore, in order to reach this conclusion the majority assumes several facts not in evidence. Ante. at 11 (e.g., the vehicle's brake or clutch must be depressed

in order to place the vehicle in motion; and the emergency brake was set). What the evidence *actually* demonstrated was that Hughes left his 5-year-old daughter in a running vehicle (with the keys in the ignition) for *over 27 minutes*. A rational trier of fact could have concluded that Hughes created a substantial risk to his daughter's health or safety under these circumstances.

{¶44} The majority also asserts that: "[s]imply stepping outside and standing next to the vehicle would not have placed [Hughes's daughter] at a substantial risk of harm." Ante. at 12. However, the area where Hughes' left his 5-year-old daughter alone was a high-traffic area, with shoppers coming and going from Wal-Mart. Officer Shappie testified that there were anywhere from 20 to 50 vehicles in the parking lot. (Mar. 16, 2009 Tr. at 8). This increased the risk of the child being injured by exiting the truck and being struck by a vehicle, or by operating the truck, striking another vehicle or pedestrian, and being injured. Furthermore, the Wal-Mart at issue here is very close to Interstate 75,[2] which means additional traffic and an additional risk that the child could be taken by someone. On top of that, Hughes left the child unsupervised for *over 27 minutes*. (Id. at 9-10). Given this significant duration of time, it is a strong possibility that a young, unsupervised child would leave the vehicle or play with the vehicle inappropriately. This is true regardless of Hughes' instructions otherwise. (Id. at

---

[2] According to the complaint, which is part of the record on appeal, the Wal-Mart at issue was located at 2400 Michigan St. Sidney, Ohio, which is less than one mile from Interstate 75. (Doc. No. 1). See *State v. White* (1962), 116 Ohio App. 522, 189 N.E.2d 160 (judicial notice of an address).

25, 28). It is also more likely that the child's DVD cartoon, given to occupy her while Hughes was absent, would finish, and the child would be left with nothing to keep her occupied—that is, nothing except all the buttons, levers, and pedals in the truck. (Id. at 13-14, 21-22). Additionally, Hughes returned 27 minutes later *only after* the police department had him paged *twice* over Wal-Mart's store intercom. (Id. at 9, 13, 24). It is unknown just how much longer Hughes would have left his daughter unsupervised had he not been paged.

**{¶45}** Hughes also testified that his daughter was able to exit the child seat and open the truck door without assistance. (Id. at 28). Similarly, Officer Shappie testified that the young girl opened the truck door when he approached the vehicle. (Id. at 7). These facts created a substantial risk to the child's safety, because she could have left the car seat and attempted to operate the truck (running with the keys in the ignition) or left the vehicle and been injured or kidnapped, or both. *State v. Fretas*, 10th Dist. No. 07AP-1046, 2008-Ohio-4686, ¶¶17-20, citing *Barnes v. Virginia* (Va.App.2005), 622 S.E.2d 278 (defendant created a substantial risk to his child's safety where the child was able to open the house door allowing him to exit unsupervised and be injured or allow strangers into the house). This is especially true in a high-traffic area such as this, with anywhere from 20 to 50 vehicles present in the parking lot and less than one mile from Interstate 75. Additionally, a citizen of Sidney reported the incident to the police, which

suggests that a member of the general populous of Sidney thought Hughes put his daughter's safety at risk. (Mar. 16, 2009 Tr. at 5).

{¶46} Giving his daughter a cell phone does not transform Hughes' conduct from reckless conduct to mere negligent conduct. Although some courts have found this fact important, the children in those cases were much older than Hughes' daughter. *Village of Utica v. Billman* (Sept. 7, 2001), 5th Dist. No. 01 CA 24 (overturning child endangerment conviction of mother who left her sleeping 4 and 8-year-old children alone with their 9 and 11-year-old siblings when the oldest child was awake and had a cell phone to contact the mother if needed); *State v. Perrine*, 5th Dist. No. 2001 CA 00338, 2002-Ohio-2898 (reversing child endangering conviction for mother who permitted 12 and 13-year-olds to watch her 4-year-old son where they could reach her by cell phone). Aside from the age difference, Hughes gave his daughter *his* cell phone so, therefore, she could *not* call him directly; instead, Hughes instructed his daughter to contact him by calling his friend, Annette, who was shopping in Wal-Mart. (Mar. 16, 2009 Tr. at 26). However, Hughes also testified that he spent 15 minutes searching for Annette in Wal-Mart so his daughter would have been unable to contact him during that time. (Id. at 23, 27).

{¶47} The cases upon which the majority relies are factually distinguishable from this case. *State v. Martin* involved an 8-year-old (almost 9-year-old) child and *State v. Boone* involved a 7-year-old child, not a 5-year-old

child like Hughes' daughter. (1999), 134 Ohio App.3d 41, 43, 730 N.E.2d 386; (Aug. 14, 1996), 1st Dist. No. C-950427. Additionally, the car in *Martin* was not left running with the keys in the ignition like Hughes' truck. Id. at 42-43. There was also evidence in *Martin* that the child was sleeping and that the vehicle was seventy (70) feet from the store's entrance. Id. at 41, 43. Hughes' daughter was not sleeping and there was no evidence regarding the truck's distance from the entrance to Wal-Mart, other than that the truck was parked in "row five". (Mar. 16, 2009 Tr. at 4-5). Furthermore, the child in *Boone* was left alone for only four (4) to five (5) minutes, according to the mother's testimony and the police report, and a maximum of fifteen (15) minutes according to two witnesses, not over twenty-seven (27) minutes like Hughes' daughter. 1st Dist. No. C-950427, at *1.

{¶48} Finally, the majority makes two propositions that need to be addressed. First, they state that the outcome in this case was "intensely fact-specific." Ante at 15. However, that this case was "intensely fact-specific" (which I interpret to mean "a close call") is reason to affirm the conviction, not reverse it in light of the applicable standard of review. Second, the majority asserts that "police officers and prosecutors should exercise appropriate discretion in deciding whether a parent's conduct crosses that thin line between bad parenting and criminal culpability." Id. The trial court's finding indicates that it felt such discretion was properly exercised.

{¶49} Reviewing all of the facts and circumstances here *in a light most favorable to the State*, a rational trier of fact could have concluded that Hughes created a substantial risk to his daughter's health or safety and convict him of child endangerment. For that reason, I dissent from the majority's opinion with respect to Hughes' first and second assignments of error and would affirm his conviction.

**/jnc**