**[Cite as *State v. Knighten*, 2025-Ohio-4495.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/ City of Toledo       Court of Appeals No. {48}L-24-1241

      Appellee       Trial Court No. CRB-24-02369

v.

Rodneshia N. Knighten       **DECISION AND JUDGMENT**

      Appellant       Decided: September 26, 2025

* * * * *

Autumn D. Adams, Esq., attorney for appellant.

Rebecca Facey, Esq., City of Toledo Prosecutor, and
Jimmie L. Jones, Esq., Assistant Prosecutor for appellee.

* * * * *

**ZMUDA, J.**

{¶ 1} Appellant, Rodneshia N. Knighten, appeals from the July 29, 2024 judgment of the Toledo Municipal Court convicting her of two counts of child endangerment of the first degree. Appellant's sole assignment of error challenges the conviction as against the

manifest weight of the evidence. For the reasons that follow, we reverse and remand for a new trial.

## I. Facts and Procedural History

{¶ 2} Following reports of an incident at her home, the city filed a complaint against appellant on March 19, 2024. On that date, police responded to a witness' report that appellant's two children, around two and four years old, were running around the sidewalks unsupervised. The witness, a neighbor's friend named Leyna Patterson, described the children as wearing no shoes and jackets, and the younger child was in a soiled diaper that was seeping through the pants. Patterson reported that the children had gotten as far as several houses away from their house before returning home.

{¶ 3} Police charged appellant with two counts of child endangerment in violation of R.C. 2919.22(A). Appellant entered pleas of not guilty to the charges on March 20, 2024. The matter proceeded to a bench trial on July 29, 2024. At trial, the state presented testimony of the responding officer, Officer Habbouche, and testimony of Leyna Patterson.

{¶ 4} Officer Habbouche testified first. He was asked to recall his visit to appellant's house. He testified that he did not see the children outside, or witness any of the events described in the phone call. Upon arriving at the house, he noticed the backyard was not fenced in and there were children's toys in the yard. He went into the house to speak with the appellant about the call he had received. There were two children in the house who he concluded were the children reported as running around because they

2.

matched the description provided to police in the witness's report. He estimated the children to be two and four years old, and the younger child had no clothes on and needed a diaper change. Habbouche testified about his contact with appellant inside the house as follows:

> I started making contact with the children, and then the mother walked up. When the mother walked up, we identified ourselves and what we were doing there. And she made a statement to me saying that she – that her kids didn't leave the house and she tried – she basically began to, you know, telling me that is not true what we're telling her. After I explained to her that, well, if your kids were out playing in the backyard, the backyard is open. And then she started getting upset with me. She said; what, am I supposed to watch them 24/7. She started getting extremely upset with me. And I continued to confront her and question her judgement.

{¶ 5} Patterson testified that she called the police that day because the young children were running on the sidewalk by themselves, they did not have the proper shoes or coats on for the cold weather, and the younger child had a very soiled diaper seeping through their pants. Patterson did not indicate, in her testimony, any specific conditions that presented an imminent threat of danger to the children, and Patterson also did not see appellant exit the home to bring the children inside. Patterson testified that, at the time she made the phone call to the police, the children were no longer running around but she could see them playing in their backyard from the road. Patterson did not know appellant and had never seen her before trial, but she had encountered the children before because they were regularly outside. When asked, she estimated that the children were running around outside for thirty to forty minutes and travelled as far as 10 or 11 houses away.

3.

**{¶ 6}** After hearing the testimony of Officer Habbouche and Patterson, appellant's counsel made a Rule 29 motion, arguing that the city had not met their burden of presenting evidence of a substantial risk. Responding to the motion for acquittal, the city stated that their burden was met and supported by the testimony of Officer Habbouche and Patterson. The city referred to the testimony about the children's age, the soiled diaper, and testimony of the witness seeing the children walking on the sidewalk as their supporting evidence. The city argued:

> Though it's not direct evidence, it's certainly a strong link to say that these were, in fact, defendant's children who were left unattended. Young children who were left unattended to be out on a street, and you know, were left to their own devices and left in danger. They lacked supervision. City believes that [its] at least met its prima facie elements.

**{¶ 7}** The trial court denied the motion for acquittal. Defense proceeded with their case, calling on appellant to testify on her own behalf and presenting no additional witnesses.

**{¶ 8}** Appellant described herself as a single mother of four children, a full-time employee, and a full-time college student. Appellant admitted that the children described in the police report were her children. On the day of the police report, her children were outside playing with toys in their backyard while she was inside the house, watching and listening for them through a kitchen window as she cleaned. She explained the backyard was open on just one side because the driveway goes to the backyard. She stated that although she had dressed them, at some point the children had taken off their shoes and jackets on their own. Appellant recalled that the weather was fifty degrees that day.

4.

Additionally, she admitted in her testimony that the youngest child needed a diaper change, which she attributed to her child's lactose intolerance.

{¶ 9} Appellant estimated that the longest period of time that she went without physically seeing the children while she was cleaning was "probably two or three minutes. I would just keep, like I said, just looking and seeing what they were doing." Appellant testified about when she realized the children were not in the backyard.

> Q: Okay. So at what point in time do you think to yourself where are the kids.
> A: I just looked and I, like, you know, I didn't see them outside, so I ran straight to the front, and I just seen them, like, trying to go, you know, down the driveway where my car is at.
> Q: Okay. So explain what direction were they going.
> A: They were just going, like, towards, like, Berkshire.
> Q: Okay. So they were coming from the backyard.
> A: Uh-huh.
> Q: All right. And what were they doing?
> A: Just walking.

{¶ 10} Appellant's response to finding the children in the front driveway was to bring them inside with her. Not long after bringing the children inside, the police were knocking on appellant's door. Appellant called no additional witnesses, and the state called no witnesses on rebuttal.

{¶ 11} In closing argument, the city summarized their supporting evidence: the age of the children, the description of the soiled diaper, the testimony of them running along the sidewalk for 30 to 40 minutes without an adult present, and the testimony that the children traveled 10 or 11 houses away. The city argued, "the lack of supervision here is what the city believes is the substantial risk to the health and safety of the children."

5.

The city argued that the element of violating a duty was met. "The fact that these children were allowed to wander from their home close to the road at such a young age does violate a duty of care and protection."

{¶ 12} The defense counsel at closing argument reminded the court, "endangering children as a charge is a subjective one, largely factually based." The defense counsel agreed "that the real crux of the case is the unattendance; however, Your Honor, I would certainly put forth that she did not knowing[ly] or recklessly put those children in substantial risk of any sort of harm." Defense counsel argued that there was a lack of evidence. "Your Honor, we do not believe as if the prosecution has put forth enough evidence to find Ms. Knighten guilty beyond a reasonable doubt." Defense rested, without renewing her motion for acquittal.

{¶ 13} Following the parties' closing arguments, the trial court found the appellant guilty, stating:

> Having heard the testimony of the witnesses and the arguments of counsel, I have reached a decision, if the defendant could stand. I do believe the prosecution has submitted sufficient evidence beyond a reasonable doubt all the elements of the charge, therefore, I will find the defendant guilty.

{¶ 14} At the sentencing hearing on September 19, 2024, the trial court imposed a sentence of 180 days in Northwest Ohio Corrections Center, suspended the 180-day sentence, and placed appellant on active probation for one year. As a part of appellant's probation, she was ordered to receive mental health assessments and treatments,

6.

parenting classes, and to have no more additional offenses. Appellant's attorney filed a timely notice of appeal of the judgment.

## II. Assignment of Error

{¶ 15} In appealing the judgment, appellant asserts a single assignment of error:

Whether the conviction of appellant for being reckless and causing a substantial risk of serious physical harm to her children was against the manifest weight of the evidence?

## III. Law and Analysis

{¶ 16} The appellant's sole assignment of error concerns the weight of the evidence. Appellant does not argue insufficient evidence as an assignment of error; rather, appellant argues the trial court's finding that appellant acted recklessly and created a substantial risk of physical harm was against the manifest weight of the evidence because the evidence in the record did not weigh in favor of finding appellant's conduct reckless nor did it reflect a failure to act on a duty of care. Appellant, furthermore, argues the evidence in the record did not weigh in favor of finding a substantial risk, without the court engaging in impermissible speculation.

{¶ 17} It is well established that the role of the appellate court, in reviewing a manifest weight challenge, is to "sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Ford,* 2021-Ohio-3058, ¶ 50 (6th Dist.). This role applies equally to a trial to the bench. *State v. Boles,* 2010-Ohio-1885, ¶ 36 (6th Dist.). In a manifest weight of the evidence review, we do not view the evidence in a light most favorable to the state. *Ford* at ¶ 50, quoting *State v. Thompkins*, 78 Ohio St.3d 380,

7.

387 (1997) (additional citation omitted.). Rather, we "will not reverse a judgment in a bench trial as being against the manifest weight of the evidence where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *Toledo v. Coley,* 2012-Ohio-4987, ¶ 11 (6th Dist.), citing *State v. Billman,* 2010-Ohio-4852, ¶ 14 (7th Dist.) (additional citation omitted.).

{¶ 18} "When reviewing a manifest weight argument, an appellate court's function is to determine whether the greater amount of credible evidence supports the verdict." *State v. Daniel,* 2023-Ohio-2800, ¶ 53 (6th Dist.), citing *Thompkins* at 387 (additional citation omitted.). It is through this lens we must review the record to determine if the city met its burden.

{¶ 19} Appellant was charged with child endangerment under R.C.2919.22(A) for creating a substantial risk to their children's health and safety. The elements for this offense are: (1) appellant was a parent (or other adult liable under the statute), (2) the child was under eighteen years old, (3) the conduct of appellant created a substantial risk to the child's health or safety, and (4) the conduct was created by a violation of a legal duty of care, protection, or support. The statute states, in pertinent part:

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. …

R.C. 2919.22(A).

8.

{¶ 20} A person takes a substantial risk, as defined by R.C.2901.01(A)(8), when there is a "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." "In determining whether a substantial risk to the health or safety of the child exists, the trial court is not permitted to 'make an inference upon an inference in order to transform a speculative risk into a substantial risk.'" *State v. Hughes,* 2009-Ohio-4115, ¶ 21 (3rd Dist.), quoting *Middleton v. McWhorter,* 2006-Ohio-7030, ¶ 11 (12th Dist.), citing *State v. Caton,* 137 Ohio App. 3d 742, 751 (1st Dist. 2000). Thus, the analysis requires us to determine whether the state presented evidence to support the verdict, without making inference upon inference, that appellant created a substantial risk of harm to her children.

{¶ 21} Risk is a fact-based determination dependent on the specific circumstances of the case. *State v. Jones,* 2023-Ohio-3862, ¶ 18 (1st Dist.). For example, age is a specific fact that courts may consider when addressing risk. *See State v. Spivey*, 2021-Ohio-2598, ¶ 13-14 (1st Dist.). Courts generally do not find risk based on one circumstance alone, and "it is the *substantial risk* of injury that controls, not the outcome." (Emphasis sic.) *Jones* at ¶ 20, citing *State v. Olah,* 2023-Ohio-2113, ¶ 37 (11th Dist.) (distinguishing between a *potentially* dangerous condition that did result in the death of a child as not reckless, compared to a condition "that inherently posed a *substantial* risk to the child").

{¶ 22} A factor may support a conviction in one case while the same factor with different circumstances may be insufficient in another case. Age combined with length of

9.

time of the conduct, for example, may support a substantial risk of physical harm to the children. *Spivey* at ¶ 13-14. The longer children are out of supervision, the more likely courts find a substantial risk of danger, especially when the children are younger. *See State v. Greenlee,* 2012-Ohio-1432, ¶ 15 (2d Dist.); *Spivey* at ¶ 14.

{¶ 23} Injury is a factual circumstance that may be considered as evidence of a substantial risk. "While the state does not need to prove actual harm, it must demonstrate that the circumstances created a strong possibility of harm." *State v. Lee,* 2024-Ohio-3080, ¶ 10 (1st Dist.). An actual injury to a child is not a necessary element for conviction nor does it necessarily mean that an appellant is guilty of causing a substantial risk, because a substantial risk is defined by the prospects of injury posed by the circumstances, not the outcome of the conditions. *See e.g. State v. Olah,* 2023-Ohio-2113, ¶ 37 (11th Dist.) (although the conditions of the apartment were cluttered and the child died from falling down the stairs, the court did not find the defendant caused a substantial risk).

{¶ 24} To be clear, it is not the result of the circumstances that makes appellant guilty of child endangerment but the circumstance itself. *Olah* at ¶ 38-40. Courts have been reluctant to uphold an appellant's conviction where there were no injuries or actual threats of harm, finding the conviction based on inappropriate speculation. *See e.g. Jones,* 2023-Ohio-3862, at ¶ 22 (1st Dist.) (even though the mother locked the children in her bedroom and left the apartment, the court overturned the conviction because the children were in good health and spirits); *Hughes,* 2009-Ohio-4115, at ¶ 35 (3rd Dist.) (trial

10.

court's finding of substantial risk was based on speculative scenarios not supported by sufficient evidence).

{¶ 25} The Supreme Court of Ohio has held that to be found guilty of creating a substantial risk under this statute, the appellant must have acted recklessly in creating a substantial risk. *State v. McGee*, 79 Ohio St.3d 193, 196 (1997). Recklessness, according to R.C. 2901.22(C), is when a person acts "with heedless indifference to the consequences", and "the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." Negligent conduct is not criminal under the statute.

> A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist.

R.C. 2901.22 (D). "Reckless conduct is defined as 'conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.'" *David v. Matter*, 2017-Ohio-7351, ¶ 12 (6th Dist.), citing *Anderson v. Massillon,* 2012-Ohio-5711, ¶ 34 (additional citations omitted.).

{¶ 26} The Ohio Supreme Court describes where the legal duties under this statute derive from and provides clarity on the scope of an actor's liability under the last element, "[t]he norm in our society is for a parent to strive to see that his children are

11.

reasonably well nourished, housed, and clothed and reasonably protected from harm, and provided with necessary health care." *State v. Sammons*, 58 Ohio St.2d 460, 463 (1979). Consequently, a parent neglecting to meet the needs of children may have criminal liability.

> Manifestly, such neglect is characterized by acts of omission rather than acts of commission . . . Accordingly, an inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A).

*State v. Kamel*, 12 Ohio St.3d 306, 309 (1984) (internal citation omitted.). A majority of child endangerment cases pertain to affirmative conduct, while endangering by omission cases are less commonly prosecuted.

{¶ 27} While the law imposes criminal liability for a reckless disregard of a child's health and safety, courts do not impose criminal liability for poor parenting. "We, as a society, cannot punish parents for every error in judgment, even if a child is injured, under a theory of strict liability." (Citation omitted.) *State v. Martin*, 134 Ohio App.3d 41, 43 (1st Dist.1999).

> It is not the function of the criminal justice system to invade the sacred right of parents to raise their children as they deem suitable and proper, and police officers and prosecutors should exercise the appropriate discretion in deciding whether a parent's conduct crosses that thin line between bad parenting and criminal culpability.

*Hughes*, 2009-Ohio-4115, at ¶ 35 (3d Dist.).

{¶ 28} Appellant contests the city's argument that she violated her parental duty by allowing her children to be outside for a period without supervision. To support their

12.

burden the city stated, "the fact that these children were allowed to wander from their home close to the road at such a young age does violate a duty of care and protection." However, the city introduced no evidence to show the children were close to the road.

{¶ 29} Although Patterson testified that the children were near a street corner, Patterson did not identify the proximity of the corner to the road or otherwise describe any inherently dangerous conditions that posed a substantial risk to the children. Thus, the record did not identify a specific harm in or near the road from which appellant failed to reasonably protect her children, as the record was devoid of evidence regarding specifics about the location, such as proximity of cars to the sidewalk or whether the street was a busy road.

{¶ 30} The record does not support that appellant failed to make sure her children were "reasonably well nourished, housed, and clothed and reasonably protected from harm, and provided with necessary health care." *See Sammons*, 58 Ohio St.2d at 463. Although the record showed that the children were not wearing shoes or jackets while outside, appellant testified that she had clothed the children, and they had taken the shoes and jackets off by themselves. Additionally, the city did not provide testimony that the weather conditions were too dangerous to go without shoes or jackets and appellant was required to make the children wear them to protect their health and safety. No evidence showed that the children were malnourished or unhoused.

{¶ 31} It was undisputed that appellant's younger child needed a diaper change, however dirty diapers are not necessarily evidence of failure to provide adequate care.

13.

The Twelfth District Court of Appeals overturned a trial court's finding that a father did not provide adequate care for his children even though "on occasion, the children returned to the welfare department with 'dirty faces' or 'dirty diapers.' *In re Vickers Children*, 14 Ohio App.3d 201, 206 (12th Dist.1983). Appellant's failure to change the dirty diaper may be an error of judgement, however, imposing criminal liability for such error crosses the line to punishing bad parenting. *See Hughes*, 2009-Ohio-4115, ¶ 35 (3d. Dist.). Given that the dirty diaper was the only evidence on the record that suggested the children were not "provided with necessary health care," the weight of the evidence did not support that appellant disregarded a parental duty based on a dirty diaper.

{¶ 32} The city argued that appellant's lack of supervision rose from mere negligence to the level of criminal liability that is recklessness, and included details not introduced as evidence. The city argued, "It is dangerous for them to have been so close to the road. And to make decisions that would put them in harm's way, the lack of oversight, the – lack of oversight, City believes does rise to the level of child endangering." The record supported the fact that the children played outside while appellant remained inside. The city's witness, however, never placed the children in any proximity to the road and failed to describe the surrounding circumstances that created an inherent, substantial risk. While playing outside, unsupervised may have presented a potential risk, the weight of the evidence failed to meet the higher standard of recklessness as opposed to negligence based on the lack of any proof there was an imminent threat to the children or proximity to danger while they were outside. Evidence

14.

of an imminent threat or danger would have supported the claim that appellant had a "conscious disregard of or indifference to a known or obvious risk of harm." *See David,* 2017-Ohio-7351, at ¶ 12 (6th Dist.). Given the lack of evidence, the weight of the evidence at most supports a finding that appellant "failed to perceive or avoid a risk," indicative of only negligent conduct. *See* R.C. 2901.22 (D).

{¶ 33} Moreover, appellant's uncontroverted testimony demonstrated appellant was actively supervising her children from inside the house. Appellant testified that she took proactive steps in supervising her children, and she retrieved the children when she saw that they were no longer in the backyard and brought them inside without incident. Patterson's testimony did not contradict appellant's claim that she was listening and looking through her window every few minutes, checking on the children. Additionally, Patterson testified that she first saw appellant at her trial and did not notice when the children went inside, admitting that she did not continuously observe the children outside. Otherwise, Patterson would have seen appellant when appellant found the children in the front yard and brought them back into the home, or at the least, observed the children go into the house.

{¶ 34} At trial the city relied on a lack of supervision as supporting evidence to demonstrate that appellant created a substantial risk, stressing, "the lack of supervision here is what the City believes is the substantial risk to the health and safety of the children." However, the record lacked evidence of a threat, force, danger or any testimony about the surrounding environment to demonstrate a substantial risk as

15.

opposed to a potentially dangerous condition. Neither Patterson nor Officer Habbouche provided any facts to support the children had been approached by a person or had entered or were prone to entering the street, or any similar, inherently dangerous conditions. The children's ages, moreover, do not create a heightened standard for child endangering based on "inherent risks" to such young children. *See,e.g. State v. Fretas,* 2008-Ohio-4686, ¶ 25 (10th Dist.) (while "inherent risks" based on young age may be valid consideration in considering specific evidence of dangerous conditions, "'inherent risks' is not the legal standard for child endangering in Ohio").

{¶ 35} Beyond the identification of the street where the children played, there was no other evidence in the record demonstrating specific risks that were present while the children were outside, such as the type of road, the presence of strangers, or inherently dangerous conditions in the neighborhood. Without testimony stating why it was a substantial risk for the children to be near Berkshire, the conclusion that it was a substantial risk to be near the street was speculative. Although an injury is not necessary, evidence presenting proof of what was nearby that could have hurt the children turns a potential or speculative risk into a substantial risk. Without more evidence about the circumstances, the trial court engaged in turning a speculative risk into a substantial risk, which is impermissible. *See Hughes,* 2009-Ohio-4115, at ¶ 21 (3rd Dist.).

{¶ 36} We recognize "[c]hild endangering cases 'are intensely fact-specific and, therefore, do not easily lend themselves to comparison to other child endangering cases.'" (Citation omitted.) *State v. Wilson,* 2024-Ohio-2951, ¶ 27 (4th Dist.). However, in a case

16.

applicable to this case, the Second District Court of Appeals reversed the conviction for child endangerment finding the state was unable to prove beyond a reasonable doubt that the appellant endangered the child. *State v. McCleod,* 2006-Ohio-579, ¶ 17 (2d Dist.). In *McCleod,* the appellant was charged because he allowed the five-year-old child he was babysitting to be 125-150 yards away, playing on a playground while the appellant was inside his apartment watching them through his kitchen window. *Id.* at ¶ 12. Although the responding officer testified that the playground was in a "problem area", the child had not been hurt or approached by any other adult besides the officer, and when the officer approached the child, the appellant responded promptly. *Id.* at ¶ 13.

{¶ 37} The facts in *McLeod* closely resemble the facts of appellant's case, considering the lack of evidence regarding dangerous conditions or an imminent threat in the neighborhood in which the children played. Although the issue in *McLeod* was sufficiency of the evidence, the court's analysis of similar factual circumstances in *McCleod* lends support for our analysis of the factual circumstances here.

{¶ 38} The court found McCleod's conduct did not rise beyond negligence to the level of criminal behavior.

> The failure to realize an ideal level of supervisory attention of a child does not equate to acting "with heedless indifference to the consequences, [thereby] perversely disregarding a known" "strong possibility, as contrasted with a remote or significant possibility," of harm to the health or safety of the child. . . While his supervision may not have been ideal, it did not meet the test for criminal liability under the endangering children statute.

*Id.* at ¶ 16. Additionally, the evidence presented of the surrounding circumstances did not meet the burden of proving there was a substantial risk present.

> The State highlighted Deputy Harvey's testimony that the playground is a "problem area" that had a history of some juvenile assault activity. While this fact should give any child's care-giver pause, this alone does not constitute a substantial risk, defined by the statute as "a strong possibility, as contrasted with a remote or significant possibility." The area was not so dangerous as to cause abnormal insecurity for Mackenzie's safety. It was only 4:00 p.m., it was a clear day, and McLeod was between 125 and 150 yards from Mackenzie.

*Id.* at ¶ 13.

{¶ 39} Here, appellant was similarly situated in distance from her children, as the testimony of the witness and appellant reflected a distance between a driveway's length to 10 houses away from her children, with nothing to quantify the measurable distance of 10 houses. The record reflected appellant was watching her children through the window of her kitchen, as did McCleod. Appellant reacted to the situation by searching for her children and bringing them inside, similarly to how McCleod came outside when the officer approached the child. Applying similar reasoning as in *McLeod*, appellant's conduct was not ideal, in that it was a "failure to realize an ideal level of supervisory attention." However, we do not criminally punish bad parenting. *Hughes*, 2009-Ohio-4115, at ¶ 35 (3d. Dist.). Given the similarity between the cases, the Second District's finding in *McCleod* that the facts were insufficient supports our conclusion that the trial court's finding in the present case was against the manifest weight of the evidence.

18.

{¶ 40} Thus, it was a manifest injustice for the trial court to conclude that the weight of the evidence supported finding that the appellant had a conscious knowledge of risk and disregarded that risk. Instead, the weight of the evidence merely supported a finding that appellant was negligent for failing to recognize the possibilities of danger, and not reckless for failing to safeguard against demonstrated substantial risk.

{¶ 41} Considering this record and the weight of credible evidence, while mindful of the trial court's role in resolving conflicts in the testimony, we find this case meets the high standard for overturning a conviction under the manifest weight of the evidence standard. *See Thompkins,* 78 Ohio St.3d 380 at 87. Therefore, we find that the trial court erred in finding appellant guilty of child endangerment.

{¶ 42} Appellant's sole assignment of error is well-taken. We therefore vacate the conviction and remand for a new trial. *See State v. Fips,* 2020-Ohio-1449, ¶ 10 ("a new trial is the appropriate remedy when a reviewing court determines that a criminal conviction is against the manifest weight of the evidence"").

## IV. Conclusion

{¶ 43} For the foregoing reasons, we reverse the judgment of the Toledo Municipal Court. We vacate the conviction and remand for a new trial. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

JUDGMENT REVERSED
AND REMANDED.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, J. | [[Applied Signature]] |
| | JUDGE |
| | |
| Christine E. Mayle, J. | [[Applied Signature 2]] |
| | JUDGE |
| | |
| Gene A. Zmuda, J. | [[Applied Signature 3]] |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.