[Cite as *State v. Billman*, 2010-Ohio-4852.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| V. | ) | CASE NO. 09-MO-10 |
| | ) | |
| SEBASTIAN T. BILLMAN, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Criminal Appeal from Court of Common
                                                          Pleas of Monroe County, Ohio
                                                          Case No. 2008-293

JUDGMENT:                                       Affirmed

APPEARANCES:
For Plaintiff-Appellee                          Attorney Thomas A. Hampton
                                                          P.O. Box 430
                                                          101 N. Main Street, Room 15
                                                          Woodsfield, Ohio 43792

For Defendant-Appellant                     Attorney John A. Vavra
                                                          132 West Main Street
                                                          P.O. Box 430
                                                          St. Clairsville, Ohio 43950

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 30, 2010

DONOFRIO, J.

{¶1} Defendant-appellant, Sebastian Billman, appeals from a Monroe County Common Pleas Court decision convicting him of felony failure to comply with an order or signal of a police officer.

{¶2} On October 4, 2008, Ohio State Highway Patrol Trooper Brian McFarland was traveling northbound on State Route 145 when he observed appellant traveling southbound at an excessive rate of speed. The trooper's radar measured appellant's oncoming speed at between 80 and 81 miles per hour. While still about 100 to 200 feet in front of appellant, Trooper McFarland activated his overhead lights and extended his left arm outside the window to signal appellant to pull over. Despite seeing the flashing lights and making eye contact with the trooper, appellant passed by Trooper McFarland without stopping. Appellant admitted he did not stop the car because he was trying to avoid the trooper. Accelerating to 85 miles per hour, appellant continued southbound for about another half mile before losing control of his vehicle at an intersection and striking a stopped car causing over $1,000 worth of damage. Appellant told the owner of the other car that an officer was chasing him.

{¶3} When Trooper McFarland arrived at the accident scene, he charged appellant with failure to comply with an order or signal of a police officer, a first-degree misdemeanor violation of R.C. 2921.331(A).

{¶4} Subsequently, a grand jury indicted appellant with a violation of R.C. 2921.331(B), a third-degree felony because it alleged that appellant caused a substantial risk of serious physical harm to persons or property while fleeing or eluding the police.

{¶5} After a bench trial, the trial court found appellant guilty as charged. The court later sentenced appellant to three years of community control, a three-year driver's license suspension, and a $300 fine. Appellant filed a timely notice of appeal on November 25, 2009.

**{¶6}** Appellant raises a single assignment of error, which states:

**{¶7}** "THE TRIAL COURT AS THE TRIER OF FACT ERRED IN FINDING THE APPELLANT GUILTY OF VIOLATING OHIO REVISED CODE §2921.331(B) AS A FELONY OF THE THIRD DEGREE, RATHER THAN A MISDEMEANOR, WHERE THAT FINDING IS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

**{¶8}** Appellant admits the violation here, but contends the felony conviction is against the manifest weight of the evidence. He argues that his misconduct did not rise to the felony level and he should have only been convicted of a misdemeanor.

**{¶9}** In support of this position, appellant urges this court to consider the testimony of Carol Prout, whose car appellant crashed into, who voiced her surprise at the felony charge since there were no injuries. Appellant also relies on Trooper McFarland's opinion that appellant's misconduct did not rise to the level of a felony. Trooper McFarland's opinion was based on the Highway Patrol policy that officers should not charge someone with felony fleeing and eluding unless the officer is directly behind the vehicle in pursuit. Appellant contends that because Highway Patrol policy dictates that a pursuit is necessary for a felony charge and because there was no pursuit, the trial court erred in convicting him of a felony.

**{¶10}** Appellant then refers to the factors listed in R.C. 2921.331(C)(5)(b), which are used for consideration in sentencing, and include such things as the duration and distance of the pursuit, the offender's rate of speed, whether the offender failed to stop for traffic lights, and whether the offender committed a moving violation during the pursuit. Appellant points out that none of the pursuit-based sentencing factors from R.C. 2921.331(C)(5)(b) were present in this case.

**{¶11}** In addition, appellant points out that plaintiff-appellee, the State of Ohio, offered no evidence to establish his speed at the time of the crash. Appellant contends that by not providing evidence of his vehicle's speed at the time of the crash, the State failed to prove beyond a reasonable doubt that he caused any substantial risk of serious physical harm. Appellant also refers to the accumulation of

gravel on the road to imply a reasonable doubt regarding whether or not the crash was the result of any substantial risk of serious physical harm caused by appellant fleeing from police.

{¶12} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

{¶13} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

{¶14} A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 59. Unlike a manifest weight challenge to a conviction resulting from a jury verdict, which requires a unanimous concurrence of all three appellate judges to reverse, a manifest weight challenge to a conviction resulting from a bench trial requires only a majority concurrence to reverse. *Struthers v. Williams*, 7th Dist. No. 07-MA-55, 2008-Ohio-6637, at ¶10.

{¶15} The court convicted appellant of violating R.C. 2921.331(B), which provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring

the person's motor vehicle to a stop." The offense was a third-degree felony because the operation of the motor vehicle caused a "substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii).

**{¶16}** A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

**{¶17}** "'Serious physical harm to persons' means any of the following:

**{¶18}** "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

**{¶19}** "(b) Any physical harm that carries a substantial risk of death;

**{¶20}** "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

**{¶21}** "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

**{¶22}** "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).

**{¶23}** And "'[s]erious physical harm to property' means any physical harm to property that does either of the following:

**{¶24}** "(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

**{¶25}** "(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." R.C. 2901.01(A)(6).

**{¶26}** To determine whether appellant's conviction was supported by the weight of the evidence, we must examine all of the evidence presented at trial.

**{¶27}** Trooper McFarland testified that while traveling northbound on State Route 145, he clocked appellant traveling southbound at between 80 and 81 miles per hour. (Tr. 22). He stated that this was "very excessive of the posted speed limit."

(Tr. 22). Trooper McFarland immediately activated his overhead lights while still 100 to 200 feet in front of appellant. (Tr. 23-24). In addition, Trooper McFarland made eye contact with appellant and extended his left arm out the window to signal appellant to pull over. (Tr. 24). Instead of pulling over, appellant accelerated. (Tr. 25). Trooper McFarland's clocked appellant traveling away from him at 85 miles per hour. (Tr. 25).

{¶28} Trooper McFarland turned around to pursue appellant. (Tr. 25). He testified that he traveled approximately one-half mile to the intersection of State Route 145 and County Road 2 where he discovered the accident that had occurred between appellant's and Prout's vehicles. (Tr. 25-26, 28). The speed limit on County Road 2 is 55 miles per hour. (Tr. 41). Trooper McFarland stated that upon questioning, appellant admitted that he had seen the lights on the trooper's cruiser and kept on going. (Tr. 34). Appellant also told Trooper McFarland that when his front tires hit some gravel his car began to slide and he could not stop to avoid hitting Prout's vehicle. (Tr. 34). When Trooper McFarland asked appellant why he did not stop when he saw the flashing lights, appellant told him that he "freaked" and was an "idiot." (Tr. 35). Appellant also told Trooper McFarland that he was trying to avoid him. (Tr. 36). Trooper McFarland testified that no one was physically injured and the only damage was to the two vehicles involved. (Tr. 36-37). As a result of his investigation, Trooper McFarland issued a Uniform Traffic Ticket charging appellant with a misdemeanor violation. (Tr. 37-38).

{¶29} On cross-examination, Trooper McFarland testified that there was no pursuit here. (Tr. 38). He also stated that he believed that appellant's conduct did not rise to the felony level. (Tr. 38). This was because he was taught at the Highway Patrol that he was not to charge someone with felony fleeing and eluding unless he was directly behind the vehicle in pursuit. (Tr. 41).

{¶30} Prout testified next. She stated that as she approached the intersection of State Route 145 and County Road 2, she witnessed appellant approaching "pretty fast." (Tr. 46). Prout testified that she stopped her car to try to prevent a bigger

crash. (Tr. 46). Prout watched as appellant's car started to slide sideways and then collided with her bumper. (Tr. 46). The crash caused over $1,000 worth of damage to Prout's vehicle. (State's Ex. 7). When appellant exited his vehicle, he told Prout that a police officer was chasing him. (Tr. 48). When Prout asked appellant what he had done, he replied that he just saw the officer and fled. (Tr. 48). On cross-examination, Prout stated that she was surprised that this matter was a felony charge. (Tr. 50).

{¶31} Appellant called his mother, Misty Billman, in his defense. However, she offered no testimony as to the circumstances surrounding appellant's speeding, the attempted stop by Trooper McFarland, or the crash. She only offered the testimony that Trooper McFarland had indicated to her that he would not charge appellant with a felony. (Tr. 56).

{¶32} This evidence supports appellant's conviction. The evidence demonstrated, beyond a reasonable doubt, that appellant failed to comply with Trooper McFarland's signal to pull over, that he instead chose to flee from Trooper McFarland at a high rate of speed that was "very excessive" of the posted speed limit, and that in doing so appellant crashed into Prout's vehicle causing serious physical damage to it, requiring over $1,000 in repairs.

{¶33} In cases where an actual collision occurred, courts have considered this fact significant in proving a substantial risk of serious physical harm. In *State v. George*, 8th Dist. No. 90511, 2008-Ohio-5128, for example, while fleeing from police, the appellant lost control of his vehicle and crashed into a fire hydrant, resulting in $1,183.63 worth of damage to the hydrant. The court found this to be persuasive evidence of a substantial risk of serious physical harm. And in *State v. Payne*, 3d Dist. No. 5-04-21, 2004-Ohio-6487, at ¶19, the court detailed the chase the appellant led police on and continued: "Furthermore, the chase ended when Payne wrecked his car, causing his vehicle significant damage. Not only did Payne put his passenger, other drivers, and himself in substantial risk of serious harm through his reckless driving, but he actually did cause serious property damage when he crashed

his automobile into a piece of farm equipment."

**{¶34}** And courts have found that even in cases where no collision occurred, the defendant's conduct rose to the level of felony fleeing and eluding based on the substantial risk of serious physical harm. See *State v. Hopkins*, 5th Dist. No. 09-CA-66, 2010-Ohio-2441, at ¶24 ("the mere fact that Appellant did not cause an actual collision with another vehicle or serious harm is irrelevant. Here, he was convicted under R.C. 2921.331(C)(5)(a)(ii), which deals with a "substantial risk." Because Appellant was fortunate enough not to actually cause harm is of no consequence."); *State v. Hall*, 8th Dist. No. 92625, 2009-Ohio-5695, at ¶19 ("the mere fact that Hall did not cause an actual collision or serious harm is irrelevant. Here, Hall was convicted under R.C. 2921.331(C)(5)(a)(ii), which deals with a 'substantial risk.'"); *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶19 ("jury could also reasonably find that the failure of Appellant to engage in a 'near collision' speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road").

**{¶35}** Furthermore, appellant's argument that the opinion of the trooper and the victim should mitigate his charge is without merit in the law. The decision of what charge to bring before the grand jury is at the prosecutor's discretion. *State v. Boddie*, 170 Ohio App.3d 590, 2007-Ohio-626, at ¶9, citing *United States v. Batchelder* (1979), 442 U.S. 114, 123-24, 99 S.Ct. 2198. And according to R.C. 2939.08, the grand jury shall "inquire of and present all offenses committed within the county." Consequently, the grand jury is empowered to return an indictment according to the facts in evidence, even though the indictment may differ from the original charge. *State v. Klingenberger* (1925), 113 Ohio St. 418, 425-26 (superseded by statute as stated in *State v. Wilson* [1995], 73 Ohio St.3d 40). The State may properly bring charges against an individual under any statute that proscribes the criminal behavior. *State v. Miles* (1983), 8 Ohio App.3d 410, 411. Thus, the decision of what charge to bring was ultimately within the discretion of the prosecutor and the grand jury, not Trooper McFarland or Prout.

{¶36} In addition, in determining whether the conviction is supported by the manifest weight of the evidence, this court need not consider the factors listed under R.C. 2921.331(C)(5)(b)(i-ix). Those factors are listed explicitly for use in sentencing and not for determining guilt or innocence.

{¶37} Finally, appellant brings up an issue regarding whether or not there is reasonable doubt that "the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii). But the evidence of the accident speaks for itself. The evidence shows that during appellant's flight, he lost control of his vehicle and crashed into a stopped car causing over $1,000 worth of damage. Because appellant actually crashed into and damaged another car during his flight, appellant necessarily caused a substantial risk of serious physical harm to property. Accordingly, appellant's argument concerning the gravel on the road being a contributing factor and the uncertainty of his speed at the time of the collision are without merit. The trial court was correct in concluding appellant caused a substantial risk to property.

{¶38} Accordingly, appellant's sole assignment of error is without merit.

{¶39} For the reasons stated above, appellant's conviction is hereby affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.