[Cite as *Cuyahoga Hts. v. Majors*, 2014-Ohio-3326.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100687 and 100689**

# VILLAGE OF CUYAHOGA HEIGHTS

PLAINTIFF-APPELLEE

vs.

# STEPHANIE A. JELENIC MAJORS, ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Garfield Heights Municipal Court
Case Nos. CRB-1300948 and CRB-1300949

**BEFORE:** Jones, J., Celebrezze, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 31, 2014

**ATTORNEY FOR APPELLANTS**

James A. Levin
2800 Euclid Avenue
Suite 545
Cleveland, Ohio   44115


**ATTORNEY FOR APPELLEE**

Jonathan D. Greenberg
Walter & Haverfield, L.L.P.
1301 East 9th Street
Suite 3500
Cleveland, Ohio   44114

LARRY A. JONES, SR., J.:

{¶1} In these consolidated cases, defendants-appellants, Stephanie A. Jelenic Majors and James A. Majors Jr., appeal from their endangering children convictions, entered after a bench trial. We affirm.

{¶2} In 2013, the Majors were each charged with one count of endangering children, a misdemeanor of the first degree. The matter proceeded to a bench trial, at which the following pertinent evidence was presented.

{¶3} On April 15, 2013, Lieutenant Brian Sturgill of the Cuyahoga Heights Police Department received a dispatch to assist in a possible domestic situation. Lieutenant Sturgill testified that he arrived on scene approximately four minutes after he was dispatched. Lieutenant Sturgill, who had been in the Majors' house before, parked his cruiser near the Majors' car and observed that their car was parked on a public street, approximately six to eight feet in front of their house.

{¶4} When he arrived on scene, two Garfield Heights police cruisers were already there. The lieutenant walked down the street to where the officers were waiting and conferred with them "for a minute," before they all walked back towards the Majors' house. When Lieutenant Sturgill looked into the Majors' vehicle, he noticed a baby sitting in its car seat. The baby had been there for some undetermined time period prior to Lieutenant Sturgill's arrival on the scene. Lieutenant Sturgill testified that the car was unlocked and the windows were open.

{¶5} Lieutenant Sturgill removed the ten-month-old infant from the vehicle and placed him in his cruiser. Lieutenant Sturgill testified that the baby did not exhibit any

signs of physical distress with the exception of "an unusual skin condition" and "severe diaper rash."

{¶6} Lieutenant Sturgill stayed by his patrol vehicle with the infant while the other police officers attempted to locate the child's parents. The Garfield Heights officers proceeded to knock on the Majors' porch door for "two to four minutes" before someone finally answered the door. Once the Majors were escorted out of their home, Lieutenant Sturgill brought the baby to the front steps of the home. Lieutenant Sturgill testified that while the Majors were being interviewed by the Garfield Heights police, he noted that Stephanie seemed nervous, had delayed responses to questioning, and had noticeably "pinpoint pupils," that Lieutenant Sturgill testified were signs of heroin or opiate use. Similarly, Lieutenant Sturgill testified that James exhibited slurred speech and delayed responses to questioning that led Lieutenant Sturgill to believe that James was also under the influence of drugs or alcohol.

{¶7} Thereafter, Stephanie was transported to a nearby hospital by EMS for an injury to her hip or side. Because officers believed James was in an "inebriated state," a family member was contacted to take custody of the baby. The Majors were later charged with child endangering.

{¶8} The trial court convicted both Stephanie and James of child endangering and sentenced each to 180 days in jail, suspended, and one year of inactive probation.

{¶9} The Majors appeal, raising two assignments of error for review.

## I. Assignments of Error

[I.] The trial court erred by denying appellants' motion for judgment of

acquittal pursuant to Rule 29.

[II.] The trial court erred by rendering a verdict in favor of the plaintiff-appellee, Village of Cuyahoga Heights; such a verdict remains against the manifest weight of the evidence.

## II.  Law and Analysis

{¶10} In the first assignment of error, the Majors argue that the trial court erred in denying their Crim.R. 29 motion for judgment of acquittal.   In the second assignment of error, the Majors argue that their convictions were against the manifest weight of the evidence.   Although these assignments of error involve different legal standards, because the facts are the same for both, we will discuss them together.

{¶11} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense;   Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶12} In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);   *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995).

{¶13} When reviewing a claim challenging the manifest weight of the evidence,

the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.* We are reminded that "it is not the function of an appellate court to substitute its judgment for that of the factfinder." *Jenks* at 279.

{¶14} The Majors were convicted of endangering children, in violation of R.C. 2919.22(A), which provides, in relevant part:

> No person who is the parent, guardian, custodian, person having custody or control, or a person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶15} A "substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶16} "The existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A)." *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus. A person acts recklessly when, with heedless indifference to the consequences, he or she perversely disregards a known risk that his or her conduct is likely to cause a certain result or is likely to be of a certain

nature. R.C. 2901.22(C). A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he or she perversely disregards a known risk that such circumstances are likely to exist. *Id.*

**{¶17}** The Majors argue that the prosecution failed to offer sufficient evidence that they recklessly created a substantial risk to the health or safety of their child. To support their position, the Majors cite *State v. Martin,* 134 Ohio App.3d 41, 730 N.E.2d 386 (1st Dist.1999), and *State v. Boone*, 1st Dist. Hamilton No. C-950427, 1996 Ohio App. LEXIS 3387 (Aug. 14, 1996). In *Martin*, the court found that a parent did not create a substantial risk to her nine-year-old child's safety when she left the child in the back of a car while she went into a store, even though the child accidently knocked the car into gear and the car rolled into the aisle of the parking lot; the child was not injured. In *Boone*, the court found that a parent who intentionally drove away and left her seven-year-old child in a public parking lot created only a speculative risk, not a substantial risk, to the child.

**{¶18}** The prosecution relies on *State v. Hawkins*, 5th Dist. Stark No. 2008CA 00280, 2009-Ohio-5253, and *State v. Lewis*, 192 Ohio App.3d 153, 2011-Ohio-187, 948 N.E.2d 487 (5th Dist.), for the proposition that leaving an infant unattended in an unlocked vehicle on a public street creates clear and substantial risks to the child's safety, including the risk of kidnapping and vehicle theft.

**{¶19}** As the Majors point out, in both *Hawkins* and *Lewis*, extreme temperatures and public parking lots were cited as reasons for upholding the defendants' convictions. But *Martin* and *Boone* are distinguishable from this case as well. *Martin* and *Boone* both

concerned older children who could independently act on their own, not a helpless baby who relied on his parents to meet his basic needs. The statutory duty imposed by the law upon parents to care, protect, and support their child necessarily requires different actions depending on the age and ability of each child. The duty naturally requires different actions with a ten-month-old baby than with an older child that can walk, talk, and eat on his or her own. An older child can most often communicate more effectively, appreciate danger and verbally object if accosted, seek help from others, or, if it had been a situation like the one in this case, simply got out of the car and walk into his house. The infant here was unable to do so. Moreover, in *Boone*, the testimony was that the defendant pulled out of the parking lot, drove a short distance, and then came back and *watched* her child in the parking lot. In this case, there was circumstantial evidence presented at trial that the Majors were neither watching nor could see their baby in his car seat.

{¶20} In *Beachwood v. Hill*, 8th Dist. Cuyahoga No. 93577, 2010-Ohio-3313, this court upheld a child endangering conviction when the defendant left three children, ages 4, 7, and 8, alone in the car with a cell phone while she shopped for groceries. This court expressly distinguished *Martin* and *Hughes*, stating:

> Here Hill left three children alone, the youngest of whom was four years of
> age. It was 9:00 p.m. Hill's car window was open far enough for her
> four-year-old to extend part of her body out the window, and someone
> could have reached inside. The parking lot was on a busy street, very close
> to Interstate 271, and had steady pedestrian and vehicular traffic. Any

rational trier of fact could have found these factors presented a substantial risk to the health or safety of the children.

\* \* \*

Hill left her three very young children unattended in a public parking lot, on a busy street, at 9:00 p.m., for 15 minutes.

**{¶21}** The facts in *Hill* are admittingly different from the facts in the case at bar, but *Hill* was decided by this district and the cases the Majors and the prosecution rely on were all decided by other appellate districts.

> Rarely will we find earlier cases decided on facts that are identical to the ones we face presently; it seems that the outcome of child endangerment cases are highly fact-specific.

*Id.* at ¶ 21. Yet, because these cases are so fact-specific is all the more reason to find that the prosecution presented sufficient evidence to support a conviction as charged; the court must view the evidence in a light most favorable to the prosecution. *Id.*

**{¶22}** In this case, the Garfield Heights police officers were already on scene when the lieutenant arrived but, to his knowledge, the Garfield Heights officers did not know the baby was in the car. Lieutenant Sturgill parked his cruiser in front of the Majors' house, walked down the street to where the other officers were located and conferred with them "for a minute," before he walked back to the house and discovered the unattended baby. Although the Majors' car was parked on the street only six to eight feet away from the porch door, Lieutenant Sturgill testified that the baby was sitting behind the driver's side seat, so he estimated the child to be another three feet away from the porch door. The house had an enclosed porch with a door and a second door that led to the

main living area of the house so one would have to go through two doors in order to enter the house. Additionally, the police had to knock on the porch door for "two to four minutes" before someone finally answered the door.

{¶23} Lieutenant Sturgill testified that while it was neither too hot nor too cold outside, the car was unlocked and the windows were open. He estimated the time that the baby was alone in the car to be "approximately 10 minutes." Although it is not known what time the Garfield Heights police officers arrived on scene, based on the timeline, it is likely the baby was left in the car for more than ten minutes.

{¶24} The evidence showed that, for at least a ten-minute period, the Majors, both of whom appeared to be under the influence of drugs and/or alcohol, abandoned their ten-month old baby in an unlocked car on a public street. They left the car windows open and entered their house, going through two exterior doors. Neither parent responded to a police officer removing their baby from the car and it took police two to four minutes of knocking to get someone to answer the door.

{¶25} To support their argument that their convictions were against the manifest weight of the evidence, the Majors again argue that there was no evidence that they acted recklessly or that there was a substantial risk to the health or safety of their baby. We disagree.

{¶26} Although these types of cases are intensely fact-specific and, therefore, do not easily lend themselves to comparison to other child endangering cases, the facts of this specific case show that the Majors created a substantial risk to the health and safety of their child. Their actions were not simply an act of bad parenting or an error in

judgment. The mother appeared high on "heroin or opiates" and the father was so inebriated that another family member had to take custody of the baby. They left their ten-month-old baby in an unlocked car on a public street with the windows down, went into the house, and even after three police cars pulled up and a police officer removed their baby from the car, it still took two to four minutes of the officers knocking on their door for one of them to answer.

{¶27} In light of these facts, there was sufficient evidence to support the convictions for child endangering. We further find that their convictions were not against the manifest weight of the evidence.

{¶28} The assignments of error are overruled.

{¶29} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Garfield Heights Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
FRANK D. CELEBREZZE, JR., P.J., DISSENTS WITH
SEPARATE OPINION


FRANK D. CELEBREZZE, JR., P.J., DISSENTING:

{¶30} I respectfully dissent from the majority's position that the Village presented sufficient evidence to establish that the appellants recklessly created a substantial risk to the health or safety of their child. In my view, the factual circumstances involved in this case, although troubling, did not rise to the level of criminal conduct.

{¶31} As stated by the majority, "substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Thus, there must be some evidence beyond mere speculation as to the risk of harm that could potentially occur due to a single imprudent act.

{¶32} In this case, the child was not injured, and the state failed to prove beyond a reasonable doubt that there was a strong possibility that he would have been injured. The majority makes much of the fact that the car was unlocked with the windows rolled down. However, these factors alone are not sufficient to support a child endangering conviction. *See State v. Martin*, 134 Ohio App.3d 41, 730 N.E.2d 386 (1st Dist.1999). Lt. Sturgill's testimony established that appellants were just a short distance away from the child, that the vehicle was parked just "six to eight feet" in front of the appellants'

home, in a residential neighborhood with minimal pedestrian and vehicular traffic, and that the weather was neither "particularly hot" nor "particularly cold." Moreover, the prosecution failed to present any evidence regarding the duration of time the child was left unsupervised prior to the arrival of Lt. Sturgill.

{¶33} The majority further references Lt. Sturgill's testimony that the mother's eyes were dilated, indicating use of "heroin or opiates," and that the father appeared to be slurring his words, indicating that he was inebriated. However, there was no evidence presented to confirm that appellants were in fact under the influence of drugs or alcohol. Lt. Sturgill was merely asked to speculate on this issue during his direct examination. Thus, the trial court was left to speculate on numerous relevant factors and was only able to find appellants guilty of child endangering by drawing inferences upon inferences.

{¶34} Under these circumstances, I would find that Lt. Sturgill's testimony did not prove, beyond a reasonable doubt, the existence of a substantial risk to the health or safety of the child. Instead, Lt. Sturgill's testimony merely presented potentially harmful scenarios that, although might have been remotely or even significantly possible, did not have a strong possibility of occurring.

{¶35} Accordingly, I believe that insufficient evidence exists to support the trial court's verdict pronouncing appellants guilty of child endangering.

{¶36} Based on the foregoing, I would sustain appellants' first assignment of error and reverse and vacate their child endangerment convictions.