[Cite as *State v. Guerra*, 2022-Ohio-3609.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PUTNAM COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 12-22-05

    v.

ALEXANDRA A. GUERRA,               O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Putnam County Municipal Court
Trial Court No. 2021 CRB 00212

Judgment Affirmed

Date of Decision:    October 11, 2022


APPEARANCES:

    *Zachary D. Maisch* for Appellant

    *Nichole M. Smith* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Alexandra A. Guerra ("Guerra"), appeals from her conviction of one count of endangering a child following a bench trial in Putnam County Municipal Court. We affirm.

{¶2} This case stems from injuries M.D. (a two-year old child) sustained while Guerra babysat him. M.D. had injuries to his face, head, and body that were discovered by M.D.'s mother when Guerra returned the child to his home.

{¶3} On December 13, 2021, a complaint was filed in Putnam County Municipal Court against Guerra for child endangerment in violation of R.C. 2919.22(A), (E)(2)(a), a first-degree misdemeanor. On December 28, 2021, Guerra was arraigned and entered a not-guilty plea.

{¶4} After a bench trial on February 24, 2022, the trial court found Guerra guilty of child endangerment. On March 24, 2022, the trial court sentenced Guerra to serve 45 days in jail.

{¶5} Guerra filed her notice of appeal on April 22, 2022 and raises two assignments of error for our review, which we will discuss together.

**Assignment of Error I**

**The Trial Court erred by finding against the weight of the evidence that the defendant recklessly created a substantial risk to the health or safety of a child, by violating a duty of care, protection or support.**

## Assignment of Error II

**The trial court erred in determining that each essential element of the crime was proven beyond a reasonable doubt due to the insufficiency of the evidence.**

{¶6} In her assignments of error, Guerra argues that her conviction is based on insufficient evidence and that her conviction is against the manifest weight of the evidence. In her first assignment of error, Guerra asserts that there was no evidence presented (at trial) regarding the conduct that led to M.D.'s bruising, the age of the bruises, or to explain M.D.'s mother's delay in contacting law-enforcement officers that is attributable to Guerra. In her second assignment of error, Guerra argues: that the State failed to present evidence of recklessness; that she created a substantial risk to the health or safety of M.D.; or that she violated her duty of care.

*Standard of Review*

{¶7} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), *superseded by state statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept individually.

{¶8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio

St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *Smith* at 89. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶9} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating

to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence*

{¶10} Here, Guerra was convicted of child endangerment under R.C. 2919.22(A). R.C. 2919.22 provides in its pertinent parts:

> (A) No person, who is the * * * person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *.

> (E)(1) Whoever violates this section is guilty of endangering children.

> (2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

> (a) Except as otherwise provided in division (E)(2)(b), (c), or (d) of this section, a misdemeanor of the first degree;

R.C. 2919.22(A), (E)(1), (E)(2)(a). "Substantial risk" is defined to mean "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶11} The requisite degree of culpability for a child-endangerment conviction is recklessness. *State v. Spivey*, 1st Dist. Hamilton No. C-200125, 2021-Ohio-2598, ¶ 12, quoting *State v. McGee*, 79 Ohio St.3d 193 (1997), syllabus. Reckless-mental culpability is defined in R.C. 2901.22, which provides as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶12} Thus, a conviction under R.C. 2919.22(A) requires the State to prove that: (1) a person having custody or control over a child under eighteen years of age (2) recklessly (3) created a substantial risk to the health or safety of the child (4) by violating a duty of care, protection, or support. *State v. Dillon*, 4th Dist. Washington No. 01 CA2591, 2013-Ohio-614, ¶ 12. We note, "these types of cases are intensely fact-specific, and therefore, do not easily lend themselves to comparison to other child-endangering cases". *Cuyahoga Hts. v. Majors*, 8th Dist. Cuyahoga Nos. 100687 and 100689, 2014-Ohio-3326, ¶ 26.

{¶13} A review of the record reveals that Guerra raised an identity defense at trial arguing that she was not the actual perpetrator of the physical harm that M.D. suffered. Affirmative acts of abuse are considered acts of commission and are

charged under R.C. 2919.22(B). However, Guerra was charged under R.C. 2919.22(A), which involves acts of *omission* or circumstances of *neglect*. *See State v. Kamel*, 12 Ohio St.3d 306, 309 (1984). "R.C. 2919.22(A) is aimed at preventing acts of omission or neglect when the breach results in a substantial risk to the health or safety of a child." *State v. Stewart*, 5th Dist. Stark No. 2007-CA-00068, 2007-Ohio-6177, ¶ 59, citing *State v. Sammons*, 58 Ohio St.2d 460 (1979), *appeal dismissed*, *Sammons v. Ohio*, 444 U.S. 1008, 100 S.Ct. 655 (1980) and *Kamel* at 308. Thus, "an inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)." *Kamel* at 309.

**{¶14}** The allegations in the instant case are that M.D. suffered physical harm (i.e., injuries to his face, head, and body) while in the custody or control of Guerra who had a duty to care for or protect him from physical harm, thereby, creating a substantial risk to the health or safety of M.D.

**{¶15}** Importantly, Guerra does not challenge the trial court's factual finding as to the first element of child endangerment (i.e., custody, control, or that she was in *loco parentis*). Rather, Guerra argues that the State did not present *any* evidence in support of the remaining elements of the offense. Thus, we look to the record to determine whether or not the State met its burden of proof.

**{¶16}** Indeed, the nature and extent of the injuries sustained by M.D. is evidence itself that Guerra's duty of care and protection owed to M.D. was breached. According to the evidence presented at trial, M.D. was a healthy two-year-old at the time he was entrusted into Guerra's care. Even though M.D. did have a small existing bruise on his forehead that appeared yellow in color, he was, otherwise, injury free. After picking M.D. up and returning to her residence, Guerra contacted M.D.'s mother regarding the existing bruise and stated that she would be giving M.D. a bath before returning him home. Hours later, when Guerra returned with M.D., M.D. lept from the *front seat* of the vehicle into his mother's arms, clinging to her, which was uncharacteristic.[1] Guerra then told M.D.'s mother that M.D. had fallen at the park. Importantly, Guerra failed to provide further information of M.D.'s injuries including the location or severity of the same.

**{¶17}** After the mother entered her residence when Guerra left, she removed M.D.'s coat and hat, and observed multiple, significant injuries about her child, none of which existed when Guerra picked-up M.D. On him, she saw numerous bruises, a split-lip, a ligature mark around his neck, and a severe bruise on the tip of his genitals that ultimately required medical treatment.

**{¶18}** Contrary to Guerra's argument, proof of an act of commission (i.e., abuse) is not an element of the offense of child endangerment as charged in this

---

[1] Despite the fact that M.D. could not verbally communicate the circumstances involved in his injuries because of his tender age and speech delays, he was able to engage in some non-verbal communication.

case.  However, the location, the nature, and the extent of M.D.'s injuries is evidence that Guerra breached her duty to care for or to protect M.D.  Here, the record supports that M.D. suffered multiple injuries that were inconsistent with a fall, which Guerra failed to discuss or reveal to M.D.'s mother.  Hence, we conclude that there was sufficient evidence to permit the trial judge to reach a determination that Guerra breached her duty of care or protection owed to M.D.

{¶19} Next, we address whether Guerra's breach created a substantial risk to M.D.'s health or safety.  "In determining whether a substantial risk to the health or safety of the child exists, the trial court is not permitted to 'make an inference upon an inference in order to transform a speculative risk into a substantial risk.'" *State v. Hughes*, 3d Dist. Shelby No. 17-19-02, 2009-Ohio-4115, ¶ 21, quoting *Middletown v. McWhorter*, 12th Dist. Butler No. CA2006-03-068, 2006-Ohio-7030, ¶ 11.  *See also State v. Caton*, 137 Ohio App.3d 742, 751 (1st Dist.2000).

{¶20} In this bench trial, the trial judge (as trier of fact) was permitted to consider the location, the nature, and the extent of M.D.'s injuries since those injuries were relevant to a determination as whether Guerra's breach created a substantial risk to the health or safety of M.D.  *See State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 137.  Regardless of who or what caused M.D.'s injuries,

the location, the nature, and the extent of his injuries demonstrates a substantial risk to his health and safety.[2]

{¶21} The question then is whether or not Guerra was reckless in her breach of her duty of care or protection of M.D. Certainly, by failing to obtain prompt medical treatment for M.D. or by failing to notify M.D.'s mother of his injuries so she (M.D.'s mother) could seek medical treatment for her child, Guerra failed to act where she had a duty to act. Any reasonably prudent babysitter would have sought medical attention for a two-year-old child who had sustained multiple injuries to his head, face, and body, or, at the very least, would have notified the parent of the injuries so the parent could act accordingly. Given the location, the nature, and the extent of M.D.'s injuries; the time period when those injuries occurred; and because Guerra's versions of the events regarding the child's injuries was at variance with the other testimony, we conclude that the failure to seek medical attention for the child or to notify his mother of the injuries created a substantial risk to the child's health and safety. Consequently, we conclude the trial judge did not err by reaching a determination that Guerra acted recklessly under the facts presented.

---

[2] Notably, neither version that Guerra provided to M.D.'s mother or law enforcement explains M.D.'s injuries to his genitals or neck. Significant to us, Guerra testified the only time she was alone with M.D. was at the park and during their ride to his home, which preceded the discovery of the *fresh* bruises to his head, face, and neck. (*See* State's Exhibits A, B, C, D, E, F). Moreover, it is uncontroverted that Guerra spent many hours with M.D. and gave M.D. a bath. Thus, M.D.'s genitals were exposed during diaper changes and the bath. Indeed, Guerra was in a position to observe and report the obvious genital injury.

{¶22} Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Guerra recklessly violated her duty of care or protection to M.D., and thus, created a substantial risk to the health or safety of M.D. Accordingly, the State met its burden of proof, and hence, there was sufficient evidence to support Guerra's child-endangerment conviction.

*Manifest Weight of the Evidence Analysis*

{¶23} Guerra raises several arguments with respect to the weight of the evidence at trial. In the first portion of her argument, Guerra asserts that that the weight of the evidence does not support her child-endangerment conviction since no evidence was presented to establish the elements of the offense. In the second portion of her argument, Guerra challenges the lack of State's evidence regarding the age or source of M.D.'s bruising. In the third portion, Guerra asserts that time period before M.D.'s mother contacted law enforcement should not be attributed to her (Guerra) acting recklessly or creating any risk to M.D.

{¶24} In a bench trial, the trial court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest-weight-of-the-evidence challenge, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and

created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387.

**{¶25}** Guerra's first assertion, as to the weight of the evidence, is predicated on the premise that we would conclude that there was not sufficient evidence presented to support her child-endangerment conviction. This presumption is contrary to the conclusion we reached in the second assignment of error. To us, what Guerra is really arguing is that the trial judge should have viewed Guerra's and her nine-year old daughter's testimonies as more credible than the State's witnesses because no one testified as to how M.D. was injured. Here, the trial judge heard the State and defense witnesses testify (at trial) and stated that he was "judging the credibility of those witnesses as they testified". Thus, it is apparent to us that the trial judge believed the State's witnesses and not Guerra. *See State v. Henderson*, 3d Dist. Allen No. 1-18-30, 2018-Ohio-4550, ¶ 29. Under the facts presented, we will not second-guess the trial court's judgment. Hence, this portion of her first assignment of error is without merit.

**{¶26}** In the second portion of her argument, Guerra asserts that the State presented no evidence regarding the age or source of M.D.'s bruising.

**{¶27}** We begin by addressing Guerra's argument related to the *source* of the bruising. Because the State charged this as an act of omission (neglect) and not

commission (abuse), the State was not required to show how M.D. developed his injuries. Thus, the argument as to the source of the child's bruising lacks merit.

{¶28} Next, we turn to the Guerra's assertion as to the *age* of his bruises. Even though the age of the bruising is relevant to the trial judge's determination of when the injuries could have occurred to establish whether M.D. sustained the injuries while in Guerra's custody or control, Guerra's assertion that the State did not present *any* evidence as to the foregoing is contrary to the evidence in the record. The State presented the testimony of Chief Tammy Blunk ("Blunk") in its case-in-chief. Blunk testified that she arrived 20 minutes after M.D.'s mother reported his injuries. According to Blunk, and based upon her first-aid training, experience in law enforcement, and as a mother, the injuries to M.D.'s face, head, and neck were fresh and continued to worsen, as she perceived them. She testified that the injuries to the child were new occurring "within the first hour". M.D.'s mother also testified that the injuries to her son occurred while he was in the care of Guerra. On the contrary, Guerra presented no evidence as to the *age* of the child's bruising.

{¶29} To us, Guerra's argument (i.e., that the trial judge should have determined that Guerra's testimony weighed more heavily than the testimony of Blunk and M.D.'s mother) is a credibility determination for the trial judge in a bench trial, in which the trial court is able to assign credibility as it deems appropriate. *See*

*Henderson* at ¶ 29. We will not disturb the trial court's credibility determination under the facts presented.

{¶30} Finally, the third portion of Guerra's argument is that the State failed to establish a timeline of when M.D. was dropped-off by Guerra and when the police arrived. This challenge is directly contradicted by the record recited above. Nevertheless, Guerra asserts that the gap of time should not be attributable to her acting recklessly or creating *any* risk to M.D. We note Guerra never fully develops this issue and does not cite any case law in support of her argument. In our view, Guerra's contention could lead us in a variety of different directions. Since her argument is not fully developed and because she did not explain how this constitutes prejudicial error, we decline to address an extraneous argument. *See* App.R. 12(A)(2); App. R. 16(A)(7).

{¶31} Therefore, having weighed the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the trial court did not clearly lose its way and create such a manifest miscarriage of justice that Guerra's conviction must be reversed. The weight of the evidence supports the finding that Guerra was a person having custody or control, or in *loco parentis* of M.D. who created a substantial risk to his health or safety by violating her duty of care or protection. Consequently, Guerra's child-endangerment conviction is not against the manifest weight of the evidence.

**{¶32}** Accordingly, Guerra's first and second assignments of error are overruled.

**{¶33}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**