[Cite as *State v. Wilson*, 2024-Ohio-2951.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA21 |
| Plaintiff-Appellee, | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| v. | : | |
| Victoria F. Wilson, | : | **RELEASED 7/30/2024** |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES</u>:

K. Danielle Whitt, Hillsboro, Ohio, for appellant.

Anneka Collins, Highland County Prosecutor, and James Roeder, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.
_____
Hess, J.

{¶1}    Victoria F. Wilson appeals from judgments of the Highland County Court convicting her, following a jury trial, of four counts of endangering children. Wilson presents two assignments of error asserting that her convictions are contrary to law because there is insufficient evidence to support them and that her convictions are against the manifest weight of the evidence. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgments.

I. FACTS AND PROCEDURAL HISTORY

{¶2}    Wilson was charged via complaints under four case numbers with four counts of endangering children in violation of R.C. 2919.22(A), first-degree misdemeanors. She pleaded not guilty. The matters proceeded to a jury trial.

**{¶3}** Sergeant Kevin Little, Sr., of the Greenfield Police Department testified that he is the school resource officer for the Greenfield Exempted Village School District. On September 18, 2023, he exited the high school to go outside for the bus release, which is the "busiest part" of his day "in terms of traffic control." Bus drivers alerted him to the presence of a vehicle blocking some of the buses and the fact that there were children inside of it. Sgt. Little located the vehicle on North Fifth Street, a city street right off State Route 28, between a middle school, a playground, and a church with a preschool. Sgt. Little testified that he has arrested kids and adults at the school. He has also investigated crimes at the playground, like vandalism and sexual assault allegations. He testified that "numerous contraceptive devices" and needles have been located there. He acknowledged that crime in the area had not caused the school or church to stop using North Fifth Street as a pick up and drop off area for children.

**{¶4}** Sgt. Little testified that the vehicle had three rows of seats, and there were four children inside. There was an unsecured boy under five years old who was "out of his seat" and between the first and second row of seats. The other three children were secured in car seats. The unsecured boy looked at Sgt. Little and started smiling. The vehicle was unlocked. Sgt. Little opened the front passenger door and noticed the boy "got nervous" and "scared." Sgt. Little also noticed a purse inside the vehicle. The vehicle was not running, the air conditioner was not on, and it was "warm" inside the vehicle. When asked if it was "a partly cloudy, approximately seventy-degree day," he testified, "Yeah, video will reflect that the sun was in and out of the clouds, yes sir." The children "were fine" and did not appear to need any medical assistance.

{¶5}   Sgt. Little ran the license plate and learned Wilson was the registered owner. He unsuccessfully tried to locate her.  After the buses had left, Wilson returned to the vehicle from the rear of the church. Sgt. Little testified that according to the video footage from the school surveillance system, Wilson had been gone for about 22 minutes and 38 seconds.  Wilson told Sgt. Little that she had been trying to get a child entered in the preschool, but "a woman over there continually repeated herself due to the paperwork not being submitted in the time frame that the church wanted," and Wilson "lost track of time."  Wilson told him two of the children in the vehicle were hers, and two were children "she watches for friends or a friend."

{¶6}   Wilson testified that she has three children—a daughter and two sons.  The day of the incident, she went to the church preschool to take care of paperwork so one of her sons could attend the next day. She had four children with her—her two sons, and two children she was babysitting.  The children were ages 4, 3, 2, and 20 months.  After parking, she noticed her children were napping and decided to go into the preschool alone.  She testified that her four-year old son had a means of communication—a tablet with internet which he uses to FaceTime her "all the time."  Wilson testified that her vehicle has a safety feature where if one exits with the key fob and leaves the vehicle running, "it actually stays running for up to thirty minutes."  Wilson testified that when she returned to the vehicle, a screen in the vehicle indicated the internal temperature was 74 degrees. All the children were fine. Three were still secured in the car; one of her sons was in someone's arms "kind of crying."

{¶7}   Wilson acknowledged she could not see or hear the children while in the church, that she left the vehicle unlocked, and that her four-year-old son could have gotten

out of it. When asked if she felt she had put the children in a situation where there was any risk, Wilson testified, "I surely hope not since I send my kids there every day." Wilson noted that when she returned to the vehicle, she saw her daughter at the playground with friends. When asked if it would have been safer to bring the children with her, Wilson testified, "I have two arms and I have four kids and I just needed paperwork." She trusted that nothing was going to happen and that one of her sons had a way to contact her if something did happen.

{¶8}  The mother of the children Wilson was babysitting testified that Wilson is an attentive and caring mother and caregiver. The mother had no concerns about the safety or well-being of her children under Wilson's care. She opined that it was safer for Wilson to leave the children in the vehicle than to "manage four children into that building."

{¶9}  The jury found Wilson guilty on all counts. The trial court sentenced her. This appeal followed.

## II.  ASSIGNMENTS OF ERROR

{¶10}  Wilson presents two assignments of error:[1]

Assignment of Error No. One:  The conviction of child endangerment was contrary to law as evidence was insufficient to support her conviction pursuant to ORC 2919.22.

Assignment of Error No. Two:  The conviction of child endangerment was against the manifest weight of the evidence.

## III.  LAW AND ANALYSIS

{¶11}  In the first assignment of error, Wilson contends that her convictions are contrary to law because there is insufficient evidence to support them. Wilson asserts

---

[1] The assignments of error are taken from pages two and six of Wilson's appellate brief; they are stated somewhat differently in the table of contents of her brief.

that she "weighed her actions and used her judgment as to whether she should wake the sleeping children and bring the 4 children under 5 years old into the preschool, amongst the bustle of the students and staff out and about * * * and through a busy parking lot, or to run into the building with what she thought would just take a couple of minutes * * *." Wilson maintains that while she made an "error in judgment, it "is not equivalent to a substantial risk to the health and safety of the children." She asserts that "[t]his incident occurred from 2:15-2:38 PM on a mild fall day with school personnel, [buses], and other children present." She asserts that "[t]hree of the four children were secured in car seats and all of the children were content when Sgt. Little approached." She notes that "the oldest child had his iPad with him that he frequently uses for FaceTime with [her]." She asserts the weather conditions were "not an issue." Wilson maintains that aside from Sgt. Little's testimony regarding previous crimes investigated at the playground, which occurred "over an unknown time period," "no further evidence regarding substantial risk of harm was introduced." Wilson claims that based on these facts, the State "did not establish a substantial risk of harm without the use of speculation and inference upon inference." She suggests this case is similar to *State v. Hughes*, 2009-Ohio-4115 (3d Dist.).

{¶12} In the second assignment of error, Wilson contends that her convictions are against the manifest weight of the evidence. She maintains that the State provided inadequate evidence "to convince a rational trier of fact beyond a reasonable doubt" that she "acted recklessly to the children when she contemplated the more safe option of waking them up and handling all four children in a busy parking lot, rather than letting them sleep while she ran her paperwork into the daycare that she parked immediately

next to." Wilson asserts that she "had no concerns of criminal activity, as her daughter was inside the school building and playground that she parked next to." She claims *State v. Martin*, 134 Ohio App.3d 41 (1st Dist. 1999), found "inadequate evidence to support a claim that the appellant recklessly created a substantial risk to the child's health or safety, with a comparable fact pattern."

### A.  Standards of Review

**{¶13}** In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997), and following *Jackson v. Virginia*, 443 U.S. 307 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 2019-Ohio-395, ¶ 13 (4th Dist.). "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, 577 U.S. 237, 243 (2016), quoting *Jackson* at 319. A reviewing court will not overturn a conviction based on insufficient evidence " 'unless reasonable minds could not reach the conclusion that the trier of fact did.' " *State v. Cook*, 2019-Ohio-4745, ¶ 15 (4th Dist.), quoting *State v. Bradshaw*, 2018-Ohio-1105, ¶ 15 (4th Dist.).

**{¶14}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. In order to satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt.

Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

(Citations omitted.) *Anderson* at ¶ 14-15. " 'Ultimately, a reviewing court should find a trial court's decision is against the manifest weight of the evidence only in the exceptional case where the evidence weighs heavily against the decision.' " *State v. Allen*, 2022-Ohio-1180, ¶ 27 (4th Dist.), quoting *State v. Gillian*, 2018-Ohio-4983, ¶ 28 (4th Dist.), citing *State v. McKelton*, 2016-Ohio-5735, ¶ 330.

### B. Elements of Endangering Children

**{¶15}** R.C. 2919.22(A) states: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * *, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."

**{¶16}** "No degree of culpability is specified on the face of R.C. 2919.22(A)." *State v. McGee*, 79 Ohio St.3d 193, 195 (1997). However, the Supreme Court of Ohio has held that the mens rea for the offense is recklessness. *Id.* at syllabus. *See* R.C. 2901.21(C)(1)

("When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly"). R.C. 2901.22(C) states:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

**{¶17}** R.C. 2901.01(A)(8) defines a "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

**{¶18}** "A child endangering conviction may be based upon isolated incidents or even 'a single rash decision' in which a parent recklessly puts his or her child's health or safety at risk." *State v. Lucas*, 2024-Ohio-842, ¶ 66 (8th Dist.), quoting *State v. James*, 2000 WL 1843196, *2 (12th Dist. Dec. 18, 2000). However, the State must present " 'some evidence beyond mere speculation as to the risk of harm that could potentially occur due to a single imprudent act.' " *Middletown v. McWhorter*, 2006-Ohio-7030, ¶ 11 (12th Dist.). The trier of fact cannot "make an inference upon an inference in order to transform a speculative risk into a substantial risk." *Id.* at ¶ 11.

## C. Analysis

**{¶19}** After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of child endangering proven beyond a reasonable doubt. It is undisputed that Wilson was the

parent, guardian, custodian, person having custody or control, or person in loco parentis of 4 children under the age of 18 years old at the time of the incident. She is the parent of two of the children and was babysitting the other two children, and the children were ages four and under. Wilson left the 4 young children alone, in an unlocked vehicle parked on a city street, right off a state route, for over 22 minutes, during a busy time of day. The children were not within Wilson's sight or hearing while she was in the church. The four-year old, who was unsecured inside the vehicle when Sgt. Little saw him, could easily exit the unlocked vehicle, and enter the street. *See generally State v. Fretas*, 2008-Ohio-4686, ¶ 1-3, 17, 27 (in affirming child endangering conviction where defendant left 3-year old with ability to open door home alone for over 19 minutes on a snowy day while the defendant went to a store, the court stated the fact that the child "could have exited the house unsupervised and unable to care for himself presented a strong possibility of harm"). Moreover, an individual with criminal intentions could easily access the four children. *See generally State v. Hawkins*, 2009-Ohio-5253, ¶ 2-4, 19 (5th Dist.) (where defendant left 10-month old in vehicle in store parking lot for at least 20 minutes on an 84-degree day with the windows down enough that one could reach inside to unlock the doors, child endangering conviction affirmed in part because defendant left the child "unattended in [a] public parking lot where an individual with criminal intentions could have kidnapped or harmed the child"). The four-year old had a way to contact Wilson if something happened. But the suggestion that the young child had the capacity to remain calm and collected during an emergency and seek help via FaceTime is undercut by the fact that the child did not FaceTime with Wilson when he was scared and upset during this non-emergency situation. Under the circumstances in this case, the jury could

reasonably conclude that Wilson recklessly created a substantial risk to the health or safety of each child by violating a duty of care, protection, or support.

{¶20} We also reject Wilson's contention that her convictions were against the manifest weight of the evidence. After our review of the record, and after we consider the evidence and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice such that the convictions must be reversed and a new trial ordered. Instead, we believe that the State introduced substantial evidence at trial to prove all the elements of child endangering with respect to each count beyond a reasonable doubt. This is not the exceptional case where the evidence weighs heavily against the decision.

{¶21} Wilson's reliance on *Martin* and *Hughes* is misplaced. In *Martin*, the defendant left her son, who was almost nine years old, alone in a locked vehicle in a crowded parking lot near a mall department store. *Martin*, 134 Ohio App.3d at 42-43 (1st Dist.). The defendant testified that the child "had been sleeping in the back seat and did not want to leave the car to go into the store" while she returned a gift, so she let him stay in the car. *Id.* at 42. At one point, the car rolled out of its parking place and into the aisle because according to the child, he "accidentally 'hit the stick out of gear.' " *Id.* Witnesses pushed the car back. *Id.* An officer responded to the scene, and after investigating about 15 minutes, had the store's security personnel read the license plate number over the store's intercom. *Id.* A few minutes later, the defendant returned to the vehicle. *Id.* The trial court found her guilty of endangering children under R.C. 2919.22(A). *Id.*

{¶22} The First District Court of Appeals concluded the evidence was insufficient to support the conviction and reversed it. *Id.* at 43-44. The court found the State failed to prove beyond a reasonable doubt that the defendant acted recklessly as defined under a prior version of R.C. 2901.22(C), which stated that " '[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.' " *Id.* at 43, quoting former R.C. 2901.22(C). The appellate court could not "say that, by leaving an almost nine-year-old child sleeping in the back seat of a locked vehicle approximately seventy feet from her destination, [the defendant] perversely disregarded a known risk or acted with heedless indifference to the consequences." *Id.* at 43. The court also held that "as a matter of law," the State failed to prove the defendant "created a 'substantial risk to the health or safety of the child.' " *Id.*, quoting R.C. 2919.22(A). The court explained that "the child was not injured, and the state failed to prove beyond a reasonable doubt that there was a strong possibility that he would have been injured." *Id.* The appellate court stated that while the defendant "may have created some speculative risk to her child," the court could not "hold that she created a strong possibility that the child would be injured. * * * To conclude otherwise would require an inference upon an inference—that the car would strike another vehicle and that the child would also be injured—which is legally impermissible." *Id.* at 44.

{¶23} *Martin* is inapposite. The duty to care for, protect, and support a child "necessarily requires different actions depending on the age and ability of each child."

*Cuyahoga Hts. v. Majors*, 2014-Ohio-3326, ¶ 19 (8th Dist.). "An older child can most often communicate more effectively, appreciate danger and verbally object if accosted, [and] seek help from others * * *." *Id.* Wilson did not leave one almost nine-year old alone in a locked vehicle in a parking lot. She left four children, ages four and under, alone in an unlocked vehicle parked on a city street, right off a state route.

**{¶24}** In *Hughes*, the defendant left his 5-year old daughter alone in his vehicle in a Wal-Mart parking lot for about 27 minutes with the air conditioner running. *Hughes*, 2009-Ohio-4115, ¶ 2-3 (3d Dist.). An officer responded to a report about the child, who opened the door when he approached the vehicle. *Id.* at ¶ 3. The officer testified that the potential dangers to her were " '[t]he multiple cars in the parking lot, the vehicle running, keys in the ignition, the period of time that she was left alone, her age, and she was able to open the car door herself.' " *Id.* at ¶ 4. The defendant testified that his daughter, who was " 'very bright,' " was watching a cartoon on a DVD player and did not want to go in the store, so he locked the doors, gave her a cell phone which she was capable of using, and told her what number to call if she had a problem. *Id.* at ¶ 7. It was a hot day, so he left the vehicle running so the air conditioner would operate. *Id.* at ¶ 8. He testified that the child was secured in a booster seat, though she could get out of it, that she had not inappropriately operated the vehicle before, and that he instructed her not to do so or unlock the door for anyone. *Id.* at ¶ 8, 10. Following a bench trial, the trial court convicted Hughes of child endangering under R.C. 2919.22(A). *Id.* at ¶ 1, 11.

**{¶25}** The Third District Court of Appeals reversed in a 2-1 decision. The lead opinion states that "the trial court found three substantial risks to the child's safety: (1) the child could have exited the vehicle and been injured in the busy parking lot; (2) the child

could have been kidnapped if she would have exited the vehicle or opened the doors for a stranger; and, (3) the child could have placed the vehicle in drive and struck another vehicle or object." *Id.* at ¶ 23. The lead opinion found that "[t]he problem with all three of these scenarios is that none is fully supported by the facts presented, and each requires multiple contingencies to occur and several inferences to be made before the actual harm is brought to fruition." *Id.* The lead opinion found the case analogous to *Martin* and found that as in *Martin*, "any substantial risk to the child's safety was merely speculative." *Id.* at ¶ 30, 32. The lead opinion also found that the fact that the defendant left the air conditioner on because of the weather and "gave the child a cell phone so she could call if she had a problem" demonstrated "sufficient concern to negate" a finding of recklessness. *Id.* at ¶ 29.

{¶26} Notably, two of the three panel members in *Hughes* did not join the lead opinion—one judge concurred in judgment only without opinion, and one judge dissented with an opinion. *See id.* at ¶ 40-49 (Preston, J., dissenting). However, even if we found the lead opinion persuasive, this case is factually distinguishable from *Hughes*. Unlike the defendant in *Hughes*, Wilson did not leave a five-year old in a locked vehicle in a parking lot, with a cell phone, after giving safety instructions. She left four children, ages four and under, alone in an unlocked vehicle, parked on a city street, right off a state route. The four-year old had a tablet, but Wilson could not have given the child any safety instructions just before her departure as the child was asleep when she left.

{¶27} Child endangering cases "are intensely fact-specific and, therefore, do not easily lend themselves to comparison to other child endangering cases." *Majors*, 2014-Ohio-3326, at ¶ 26 (8th Dist.). Under the specific facts of this case, we conclude that

there was sufficient evidence to support Wilson's convictions and that her convictions were not against the manifest weight of the evidence.  Accordingly, we overrule the first and second assignments of error, and we affirm the trial court's judgments.

JUDGMENTS AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENTS ARE AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the HIGHLAND COUNTY COURT to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**